UNITED STATES POSTAL SERVICE
Approved Postal Provider

CASEMAIL

www.CaseMail.us

# CERTIFICATE OF MAILING

On: Oct 2, 2026

The United States Postal Service verified acceptance and mailing of the enclosed documents marked with the CASEMAIL ID, postage pre-paid with sufficient postage, to the following recipients:

**ON BEHALF OF:**

Nadja Yang
200 E Liberty St Lbby Unit 7760
Ann Arbor,MI 48107

**RECIPIENT:**

Department of Attorney General
Attorney General
PO Box 30212
Lansing, MI 48909-7712

**Observations:**

## MAILING HISTORY

MAILED ON: Oct 2, 2026

POSTAGE TYPE: First Class Certified Mail with Return Signature

CASEMAIL ID: CM-88115-0021.01

USPS BARCODE: 92148901324734002434835910

**USPS SCAN**

**CASEMAIL ID**

CM-88115-0021.01

## Affirmation of Truth and Service

Pursuant to 28 U.S.C. § 1746

I, Joe L. Ruiz, declare that I am not a party to this action, am over 18 years of age, and that I mailed/served the above-referenced document(s) bearing the CaseMail ID listed above in the manner shown by depositing them in an official depository under the exclusive care and custody of the United States Postal Service, properly addressed and with sufficient postage, to the recipients listed above or on the attached mailing list.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 and under the laws of the United States of America that the foregoing is true and correct, except as to matters stated upon information and belief, and as to those matters I believe them to be true, and I understand that this declaration may be filed in an action or proceeding in a court of law.

Digital Stamp

DATE: Oct 2, 2026

/S/ Joe L. Ruiz

Vertrius, Corp. d/b/a CaseMail
16192 Coastal Highway
Lewes, DE 19958

**Document Verification**

Copies of documents, along with applicable mailing certificates and delivery certificates, are archived and accessible to authorized parties.

CASEMAIL

# USPS CERTIFED MAIL®

## CERTIFICATE OF DELIVERY

CERT FORM: USPS 101

The following information displayed in this certificate was provided by the United States Postal Services and verified by VerTrius d/b/a CaseMail. If signature is required of the recipient, a request must be made prior to mailing.

**United States Postal Service Certified Mail ®**

**Sender:**
Nadja Yang
200 E Liberty St Lbby Unit 7760
Ann Arbor,MI 48107

**1. Article Addressed to:**
Department of Attorney General
Attorney General
PO Box 30212
Lansing, MI 48909-7712

**DELIVERY STATUS VERIFIED BY USPS**

| | |
|---|---|
| **DATE OF DELIVERY:** | October 09, 2026 11:21 am |

**USPS DELIVERY SCAN:**
Your item has been delivered and is available at a PO Box at 11:21 am on October 9, 2026 in LANSING, MI 48924.

**2. Article Number:** 9214890132473400243483591O

**3.CaseMail ID:** CM-88115-0021.01

**4.Proof of Postage:**

Copy of documents attached hereto stamped with the above listed CaseMail ID were enclosed, mailed, and delivered by the United States Postal Service.

VerTrius Certificate Form: USPS 101 Copyright 2019 by VerTrius Corp All Rights Reserved

PROOF OF POSTAGE PAID:

UNITED STATES POSTAL SERVICE

PROOF OF POSTAGE PAID:

PROOF OF MAILING:

USPS® verified acceptance of the attached documents with sufficient postage paid and were mailed on the date listed below:

10/2/2026

CONTENT VERIFICATION:

CaseMail ID:

CM-88115-0021.01

## Affirmation of Truth and Service

Pursuant to 28 U.S.C. § 1746

I, Joe L. Ruiz, declare that I am not a party to this action, am over 18 years of age, and that I mailed/served the above-referenced document(s) bearing the CaseMail ID listed above in the manner shown by depositing them in an official depository under the exclusive care and custody of the United States Postal Service, properly addressed and with sufficient postage, to the recipients listed above or on the attached mailing list.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 and under the laws of the United States of America that the foregoing is true and correct, except as to matters stated upon information and belief, and as to those matters I believe them to be true, and I understand that this declaration may be filed in an action or proceeding in a court of law.

Dated: October 09, 2026 11:21 am

Joe L. Ruiz
VerTrius, Corp.
d/b/a CaseMail
16192 Coastal Highway
Lewes, DE 19958

Chi
200 E Liberty St Lbby Unit 7760
Ann Arbor MI 48107

M: Nadja Yang <nadja@njy.dev>

C: tel:332.203.3124

Plaintiff *pro se*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

San Francisco Division

CHI,

*Plaintiff*,

v.

REGENTS OF THE UNIVERSITY OF MICHIGAN,

*Defendant*.

Case No. 3:26-cv-11021-LJC

The Honorable Lisa J. Cisneros

**NOTICE OF CONSTITUTIONAL QUESTION**

Fed. R. Civ. P. 5.1(a)

28 U.S.C. § 2403(b)

Mich. Comp. Laws § 15.243(1)(v)



CM-88115-0021

1. Plaintiff Chi gives notice under Fed. R. Civ. P. 5.1(a) that the Complaint, ECF No. 1, draws into question the constitutionality of a statute of the State of Michigan, Mich. Comp. Laws § 15.243(1)(v) (1976 Mich. Pub. Acts No. 442, § 13, as amended). Count I, Compl. ¶¶ 30–37; Prayer for Relief ¶ A.

2. Under that provision, "[a] public body may exempt from disclosure as a public record under this act" "[r]ecords or information relating to a civil action in which the requesting party and the public body are parties." Mich. Comp. Laws § 15.243(1), (1)(v).

3. The question is whether a provision that classifies requesters of public records by whether "the requesting party and the public body are parties" to "a civil action" is a law that Michigan may "make or enforce," U.S. Const. amend. XIV, § 1, consistently with "the right of the people . . . to petition the Government for a redress of grievances," *id.* amend. I, or is invalid on its face. Compl. ¶¶ 31–36. The Plaintiff proceeds under § 1 of "An Act to enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States, and for other Purposes," Act of Apr. 20, 1871, ch. 22, 17 Stat. 13, Rev. Stat. § 1979, 42 U.S.C. § 1983.

4. The parties do not, at present, include Michigan, one of its agencies, or one of its officers or employees in an official capacity. Fed. R. Civ. P. 5.1(a)(1)(B). Defendant the Regents of the University of Michigan is "a body corporate known as the Regents of the University of Michigan," Mich. Const. art. VIII, § 5, "with the right, as such, of suing and being sued," Mich. Comp. Laws § 390.4, and is sued as such. Compl. ¶¶ 5, 12.

5. Michigan may intervene "for argument on the question of constitutionality," 28 U.S.C. § 2403(b), within the time Fed. R. Civ. P. 5.1(c) allows. The Plaintiff does not oppose intervention on the terms the statute provides.

Case 3:26-cv-11021-EMC Document 94 Filed 10/30/26 Page 3 of 3

Dated: September 30, 2026

Respectfully submitted,

/s/ Chi

Chi, Plaintiff *pro se*

Assisted-by: Claude Fable 5.1 via Claude Code



CM-88115-0021

# UNITED STATES DISTRICT COURT

for the
Northern District of California

Chi,
*Plaintiff*
v.
Regents of the University of Michigan,
*Defendant*

CV26-11021 LJC

Civil Action No. ____________

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

Regents of the University of Michigan
Office of the Vice President and Secretary
1109 Geddes Ave, Suite 3300
Ann Arbor, MI 48109-1079

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Chi, Plaintiff pro se
200 E Liberty St Lbby Unit 7760
Ann Arbor MI 48107
332.203.3124 · nadja@njy.dev

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date: 9/28/2026

*Signature of Clerk or Deputy Clerk*

Chi
200 E Liberty St Lbby Unit 7760
Ann Arbor MI 48107
M: Nadja Yang <nadja@njy.dev>
C: tel:332.203.3124
Plaintiff *pro se*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

San Francisco Division

| | |
|---|---|
| CHI,<br>*Plaintiff*,<br>v.<br>REGENTS OF THE UNIVERSITY OF MICHIGAN,<br>*Defendant*. | Case No. 3:26-cv-_____<br>The Honorable ____________________<br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, NOMINAL DAMAGES, PRODUCTION OF PUBLIC RECORDS, PUNITIVE DAMAGES, AND CIVIL FINES**<br>42 U.S.C. § 1983<br>U.S. Const. amends. I, XIV<br>Mich. Comp. Laws § 15.231 *et seq.*<br><br>JURY TRIAL DEMANDED |

Plaintiff Chi, for her complaint against Defendant the Regents of the University of Michigan, alleges as follows.

## Introduction

1. On July 31, 2026 the Plaintiff requested from the University of Michigan, under Michigan's "freedom of information act," 1976 Mich. Pub. Acts No. 442, Mich. Comp. Laws § 15.231 *et seq.*, "[a]ll engagement letters, retention agreements, amendments, rate schedules, and outside-counsel guidelines between the University of Michigan (including its Regents and its Office of the Vice President and General Counsel) and the law firm Barnes & Thornburg LLP"; "[a]ll invoices, billing statements, fee statements, and statements of account submitted by Barnes & Thornburg LLP to the University . . . concerning any of the following matters, or any related proceeding," four matters identified by their docket numbers in this Court and in the Bankruptcy Court of this District; and "[a]ll records of payment, payment vouchers, disbursement records, and payment approvals corresponding to the invoices described in item 2." On August 24, 2026 the University of Michigan, by Tracey Piercecchi, its "FOIA Coordinator," denied the request in its entirety under Mich. Comp. Laws § 15.243(1)(v), which exempts "[r]ecords or information relating to a civil action in which the requesting party and the public body are parties."

2. Mich. Comp. Laws § 15.231(2) declares that "all persons, except those persons incarcerated in state or local correctional facilities, are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees," and that "[t]he people shall be informed so that they may fully participate in the democratic process."

3. Count I challenges Mich. Comp. Laws § 15.243(1)(v) on its face under

the First and Fourteenth Amendments, through 42 U.S.C. § 1983, and seeks a declaration of its invalidity, an injunction against its application to the Plaintiff, and nominal damages of $0.67. Count II, accordingly, under the "remaining portions" of 1976 Mich. Pub. Acts No. 442, Mich. Comp. Laws § 8.5, charges the Regents of the University of Michigan with an arbitrary and capricious denial and seeks an injunction against the application of Mich. Comp. Laws § 15.243(1)(v) to the Plaintiff's requests, an order to cease withholding and to produce the records, punitive damages of $1,000.00, and civil fines of $1,000.00 and of not less than $2,500.00 nor more than $7,500.00 for the denial, payable to the general fund of the state treasury. Mich. Comp. Laws §§ 15.240(4), (7), 15.240b.

## Parties

4. Plaintiff Chi (/kaɪ/, https://en.wikipedia.org/wiki/Help:IPA/English *KY*, https://en.wikipedia.org/wiki/Help:Pronunciation_respelling_key), also known as Nadja Yang, is a natural person. She is an undergraduate student of the University of Michigan, registered for the Fall 2026 academic term, studying in the honors mathematics program.

5. Defendant is "a body corporate known as the Regents of the University of Michigan." Mich. Const. art. VIII, § 5. It has "general supervision of its institution and the control and direction of all expenditures from the institution's funds." *Id.* It has "the right, as such, of suing and being sued." Mich. Comp. Laws § 390.4. It is a "public body." Mich. Comp. Laws § 15.232(h). The Supreme Court of Michigan has called it "the highest form of juristic person known to the law, a constitutional corporation of independent authority, which, within the scope of its functions, is coordinate with and equal to that of the legislature." *Federated Publications, Inc. v. Michigan State University Board of Trustees*, 460 Mich. 75, 87 n.8 (1999) (quoting *Board of Regents of the University of Michigan v. Auditor General*, 167

Mich. 444, 450 (1911)). It is being sued here, "as such."

6. The Regents of the University of Michigan acts through its officers and employees, among them Patricia Petrowski, Vice President and General Counsel of the University of Michigan, appointed "to serve as vice president and general counsel for a two-year term effective Aug. 26, pending regental approval," in succession to Timothy G. Lynch, who, on or about August 24, 2026, the date of the University of Michigan's final determination, in the Northern District of California and elsewhere, did knowingly establish minimum contacts with this District, to wit, "such a truly unique, special place," Stanford University, Stanford, California 94305, by means of employment as its Vice President and General Counsel ("He will begin his tenure on Aug. 31."), and was thereupon, "walking the campus, meeting people," to all appearances essentially at home here;[1] Tracey Piercecchi, who signed the denial at issue as "FOIA Coordinator"; and Matthew Riggs, who signed the extension notice that preceded it as "FOIA Compliance Specialist Associate," the latter two of the University of Michigan's Freedom of Information Act office at Suite 3300 Ruthven, 1109 Geddes Avenue, Ann Arbor, Michigan. At all relevant times each acted under color of state law.

## Jurisdiction and Venue

### Jurisdiction

7. The University of Michigan's letter of August 24, 2026, signed by Tracey Piercecchi, its "FOIA Coordinator," identified two forums in which the Plaintiff

[1] Paul Corliss, *General Counsel Timothy Lynch to Depart Michigan for Stanford; Patty Petrowski Appointed Successor*, The University Record (July 8, 2026), https://web.archive.org/web/20260709025340/https://record.umich.edu/articles/general-counsel-timothy-lynch-to-depart-michigan-for-stanford-patty-petrowski-appointed-successor/ Chelcey Adami, *Timothy G. Lynch Named Stanford's New General Counsel*, Stanford Report (July 8, 2026), https://web.archive.org/web/20260709025345/https://news.stanford.edu/stories/2026/07/timothy-g-lynch-new-general-counsel First Am. Compl. ¶ 13, at 6–7, *Yang v. Lynch (In re Yang)*, Adv. No. 26-03032 (Bankr. N.D. Cal. Sept. 10, 2026), ECF No. 13.

could seek review of its denial: the "President of the University," in the letter's words, and the so-called "court of claims," four judges of the Michigan Court of Appeals assigned by the Supreme Court of Michigan, Mich. Comp. Laws § 600.6404(1), whose act admits no claimant "who has an adequate remedy upon his claim in the federal courts," *id.* § 600.6440. The Supreme Court of Michigan spells it "a 'court' of claims." *Taylor v. Auditor General*, 360 Mich. 146, 150 (1960).

8. This Court nevertheless has original jurisdiction of Count I under 28 U.S.C. §§ 1331 and 1343(a)(3). Count I arises under 42 U.S.C. § 1983 and the First and Fourteenth Amendments.

9. Declaratory relief is authorized by 28 U.S.C. §§ 2201–2202 and Fed. R. Civ. P. 57.

10. Count II arises under 1976 Mich. Pub. Acts No. 442. It is "so related to claims in the action within such original jurisdiction that [it] form[s] part of the same case or controversy under Article III of the United States Constitution," and this Court has "supplemental jurisdiction" over it. 28 U.S.C. § 1367(a). When a State establishes a general rule as to personal rights, "its enforcement by a Federal court in a case between proper parties is a matter of course, and the jurisdiction of the court, in such case, is not subject to State limitation." *Railway Co. v. Whitton's Administrator*, 80 U.S. (13 Wall.) 270, 286 (1871).

11. Mich. Comp. Laws § 15.240(1)(b) provides that an action to compel disclosure be commenced "in the circuit court, or if the decision of a state public body is at issue, the court of claims."[2] "A civil action is commenced by filing a

[2] The same sentence adds "within 180 days after a public body's final determination to deny a request." *Id.* Tracey Piercecchi's letter stated the period and named the tribunal. Paragraph 26. This complaint is filed well within the period, and its filing stops the clock. 28 U.S.C. § 1367(d); *Artis v. District of Columbia*, 583 U.S. 71, ___ (2018) (slip op., at 2) ("to hold it in abeyance, i.e., to stop the clock"). In any event, the clause is addressed to Michigan's courts. The Supreme Court of Michigan reads it as specifying "how such an FOIA suit should be filed," *Progress Michigan v. Attorney General*, 506 Mich. 339, ___ (2020) (slip op., at 9), and administers it by the statutes "prescribing the practice in the circuit courts": the action "is commenced upon the filing of a complaint in a court," and "the statutory period of limitations is tolled upon the filing of a complaint." *Id.* at ___ (slip op., at 14–15) (quoting Mich. Comp. Laws § 600.6422(1) and describing

complaint with the court." Fed. R. Civ. P. 3; *Berk v. Choy*, 607 U.S. ___, ___ n.2 (2026) (slip op., at 7 n.2). When a Federal Rule "answers the question in dispute," "a federal court bypasses *Erie*'s inquiry altogether," *id.* at ___ (slip op., at 3–4), and describing the state provision as a precondition "does not magically dispel the conflict," *id.* at ___ (slip op., at 8). In this Circuit a state statute that sends a proceeding to a named state court is an "internal state venue provision[]," and state rules "which make sense only where applied to state courts need not be imported into federal practice." *Duchek v. Jacobi*, 646 F.2d 415, 418 (9th Cir. 1981).

12. The Regents of the University of Michigan is "a body corporate," Mich. Const. art. VIII, § 5, "with the right, as such, of suing and being sued," Mich. Comp. Laws § 390.4; 1851 Mich. Pub. Acts No. 151, § 4. A State that gives a corporation "the capacity to sue and be sued" thereby "strips itself of its sovereign character, so far as respects the transactions of the" corporation. *Bank of the United States v. Planters' Bank of Georgia*, 22 U.S. (9 Wheat.) 904, 907–08 (1824); *Galette v. New Jersey Transit Corp.*, 607 U.S. ___, ___ (2026) (slip op., at 7). The Regents of the University of Michigan is therefore not an arm of the State of Michigan, *id.* at ___ (slip op., at 10–11, 13), and it is a "person" within 42 U.S.C. § 1983, *Will v. Michigan Department of State Police*, 491 U.S. 58, 70 (1989).

13. Count II asks this Court to order a state-created corporation to comply with state law. The consequence of *Galette* for such a request was contemplated at argument, and again in rebuttal, by the New Jersey Transit Corporation. If the Court adopted the rule that Galette and Colt proposed, it explained, then "under their theory, the Louisiana Department of Public Safety and Corrections

---

*id.* §§ 600.1901, 600.5856(a)). In a court of the United States those offices are held by Fed. R. Civ. P. 3 and 28 U.S.C. § 1367(d). "[T]he place of bringing the suit is not part of the cause of action," and a court's jurisdiction "is to be determined by the law of the court's creation and cannot be defeated by the extraterritorial operation of a statute of another State, even though it created the right of action." *Tennessee Coal, Iron & Railroad Co. v. George*, 233 U.S. 354, 359–60 (1914). The better reading is that the clause has no application to an action in a court of the United States.

is not Louisiana. It's a different thing. Maybe you can't get money from it, from the state coffers, but you can still hale it into court, including in federal court for a state law injunction, if you wanted to because it is not the state. It's a separate thing." Tr. of Oral Arg. 24–25, *Galette v. New Jersey Transit Corp.*, No. 24-1021 (U.S. argued Jan. 14, 2026) (argument of Michael Zuckerman, Deputy Solicitor General of New Jersey), https://www.supremecourt.gov/oral_arguments/argument_transcripts/2025/24-1021_g314.pdf. NJ Transit considered this "a huge, huge flaw in their argument." *Id.* at 25. Justice Kavanaugh asked counsel for Galette and Colt about "the blast radius of your position if it were accepted." *Id.* at 74 (question to Michael B. Kimberly). Counsel answered that the entities in question "didn't get immunity between 1979 and 2019 as it was," that "the sky didn't fall then," and that "[t]here's no reason to think that the sky would fall now." *Id.* at 75. NJ Transit returned to the subject in rebuttal, to measure "the immense, to use Justice Kavanaugh's phrase, blast radius." *Id.* at 81. "[S]tate law injunctions are now available in federal courts inside those states as to all of these entities," *id.* at 79–80; the Florida Department of Transportation "would now be subject to an injunction in federal court under a state law claim in Florida because it is in their telling just not the state, it's a corporation," *id.* at 80; and as for the Louisiana Department of Corrections, "[y]ou could just get a state law injunction contra *Pennhurst* to try to close a prison in Louisiana because, in their telling, it's not the state," *id.* A unanimous Court, having "never once found a corporation that was liable for its own judgments to be an arm of the State, even when the State had significant control over the entity," *Galette*, 607 U.S. at ___ (slip op., at 13), held that NJ Transit "is not an arm of New Jersey." *Id.* at ___ (slip op., at 23). Count II proceeds on that guidance.

14. This Court has personal jurisdiction over the Regents of the University of Michigan. Fed. R. Civ. P. 4(k)(1)(A); Cal. Civ. Proc. Code § 410.10. A nonresident that commits an intentional act "expressly aimed" at the forum, knowing that "the

brunt of that injury would be felt" there, "must 'reasonably anticipate being haled into court there'" to answer for it. *Calder v. Jones*, 465 U.S. 783, 789–90 (1984); *Briskin v. Shopify, Inc.*, 135 F.4th 739, ___ (9th Cir. 2025) (en banc) (slip op., at 21–22). The University of Michigan's denial of August 24, 2026, by Tracey Piercecchi, its "FOIA Coordinator," is an intentional act. Its only stated basis is "a civil action in which the requesting party and the public body are parties." Mich. Comp. Laws § 15.243(1)(v). The civil proceedings identified in the request are or were pending in this District, and Ms. Piercecchi's letter reproduces their docket numbers. Among them is *Yang v. Lynch (In re Yang)*, Adv. No. 26-03032 (Bankr. N.D. Cal.), against "Timothy G. Lynch, in his official capacity as [then] Vice President and General Counsel of the University of Michigan, and his successors in office." Compl. 1, ECF No. 1 (filed July 15, 2026); First Am. Compl. ¶¶ 12–13, at 6–7, ECF No. 13. The act was expressly aimed at this forum. A defendant's "suit-related conduct must create a substantial connection with the forum State," *Walden v. Fiore*, 571 U.S. 277, 284 (2014), and the University of Michigan's suit-related conduct is a denial whose stated subject is "a civil action in which the requesting party and the public body are parties," the civil proceedings so described being in this District. It classified the Plaintiff by her participation in them. That contact is the University of Michigan's "own choice and not 'random, isolated, or fortuitous.'" *Briskin*, 135 F.4th at ___ (slip op., at 35) (internal quotation marks omitted).

**Venue**

15. "[T]his section shall govern the venue of all civil actions brought in district courts of the United States." 28 U.S.C. § 1391(a)(1). Whether venue is "wrong" or "improper" "depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws." *Atlantic Marine Construction Co. v. United States District Court*, 571 U.S. 49, 55 (2013). A civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C.

§ 1391(b)(1). "For all venue purposes," "an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." *Id.* § 1391(c)(2). In a State with more than one judicial district, "a defendant that is a corporation" is "deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." *Id.* § 1391(d). The Regents of the University of Michigan is a body corporate, Mich. Const. art. VIII, § 5, "with the right, as such, of suing and being sued," Mich. Comp. Laws § 390.4; Paragraph 12. It is subject to this Court's personal jurisdiction with respect to this civil action, and its contacts with this District would be sufficient if this District were a separate State. Paragraph 14. It resides in this District, 28 U.S.C. § 1391(c)(2), (d), and venue lies here, *id.* § 1391(b)(1).

**Divisional Assignment**

16. "A civil action arises in the county where a substantial part of the events or omissions giving rise to the claim occurred." Civil L.R. 3-2(c). The petitioning at which the denial was aimed is pending before this Court in San Francisco. Paragraph 23. This action arises in the County of San Francisco, *id.*, and is assignable to the San Francisco Division or the Oakland Division, Civil L.R. 3-2(d).

**Standing**

17. Article III asks "'What's it to you?'" *Bost v. Illinois State Board of Elections*, 607 U.S. ___, ___ (2026) (slip op., at 3) (quoting A. Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 Suffolk U. L. Rev. 881, 882 (1983)). A "person" "has a right to inspect, copy, or receive copies of the requested public record." Mich. Comp. Laws §§ 15.232(g), 15.233(1). On August 24, 2026 the University of Michigan, by Tracey Piercecchi, its "FOIA

Coordinator," invoked Mich. Comp. Laws § 15.243(1)(v) against the Plaintiff and withheld the requested records. Paragraph 25. The injury in fact is the "denial of access to the requested" records. *Reed v. Goertz*, 598 U.S. 230, 234 (2023); *Gutierrez v. Saenz*, 606 U.S. 305, 315 (2025); *Federal Election Commission v. Akins*, 524 U.S. 11, 21 (1998). The reason given for it is a classification of the Plaintiff by her petitioning, *cf.* *Catholic Charities Bureau, Inc. v. Wisconsin Labor & Industry Review Commission*, 605 U.S. 238, 250 (2025) (eligibility that "ultimately turns on inherently religious choices"), and a party adversely affected by a decision has standing "to argue that the cited reasons violated [her] rights" whether or not the decisionmaker "might eventually find another reason." *Gutierrez*, 606 U.S. at 320 (citing *Akins*, 524 U.S. at 25). A declaration that the provision is invalid "would eliminate the [University of Michigan's] justification for denying" the records, *Reed*, 598 U.S. at 234; *Gutierrez*, 606 U.S. at 319, and an injunction against its application to her requests reaches the provision itself, which remains available to the University of Michigan for her next request. "[T]he value of a sword of Damocles is that it hangs—not that it drops." *First Choice Women's Resource Centers, Inc. v. Davenport*, 608 U.S. ___, ___ (2026) (slip op., at 15) (quoting *Arnett v. Kennedy*, 416 U.S. 134, 231 (1974) (Marshall, J., dissenting)).

18. Nominal damages redress the completed violation: "[b]ecause 'every violation [of a right] imports damage,' . . . nominal damages can redress [the] injury even if [the plaintiff] cannot or chooses not to quantify that harm in economic terms." *Uzuegbunam v. Preczewski*, 592 U.S. ___, ___ (2021) (slip op., at 12). "Article III is worth a dollar." *Id.* at ___ (slip op., at 11) (quoting *Sprint Communications Co. v. APCC Services, Inc.*, 554 U.S. 269, 305 (2008) (Roberts, C.J., dissenting)). Congress "abolished the statutory amount-in-controversy requirement for federal-question jurisdiction in 1980," and the Supreme Court has "never held that one applies as a matter of constitutional law." *Id.* The

Plaintiff seeks nominal damages of $0.67, a figure selected to be nominal.

**Equity Jurisdiction**

19. In an unsigned order granting a stay, the Supreme Court has said that "[a]lthough [its] interim orders are not conclusive as to the merits, they inform how a court should exercise its equitable discretion in like cases." *Trump v. Boyle*, No. 25A11, slip op. at 1 (U.S. July 23, 2025) (order), https://www.supremecourt.gov/opinions/24pdf/25a11_2cp3.pdf. In October Term 2024, on "three emergency applications," *Trump v. CASA, Inc.*, 606 U.S. 831, 837 (2025), the Court restated the source of the federal courts' equitable authority. "The Judiciary Act of 1789 endowed federal courts with jurisdiction over 'all suits . . . in equity,'" and "still today, this statute 'is what authorizes the federal courts to issue equitable remedies.'" *Id.* at 841 (citations omitted). The jurisdiction so conferred "is the same that the High Court of Chancery in England possesses," *id.* (internal quotation marks omitted), and the Court "said it before . . . and say[s] it again: '[E]quity is flexible,'" *id.* at 846 (citation omitted).

20. Among the remedies "traditionally accorded by courts of equity," *id.* at 841 (internal quotation marks omitted), is the injunction against enforcement of a challenged law. "Traditionally, courts issued injunctions prohibiting executive officials from enforcing a challenged law or policy only against the plaintiffs in the lawsuit." *Id.* at 837. At the founding "there were 'sometimes suits to restrain the actions of particular officers against particular plaintiffs,'" and "[t]he Chancellor's remedies were also typically party specific." *Id.* at 842. The Court noted "a long line of cases authorizing suits against state officials in certain circumstances." *Id.* at 846 n.9.

21. The complete-relief principle, the Court agreed, "has deep roots in equity." *Id.* at 851. "The equitable tradition has long embraced the rule that courts generally 'may administer complete relief between the parties.'" *Id.* "[T]he essence of equity jurisdiction has been the power of the Chancellor to do equity

and to mould each decree to the necessities of the particular case." *Id.* at 854 (internal quotation marks omitted). In *CASA* itself, "prohibiting enforcement of the Executive Order against the child of an individual pregnant plaintiff" would "give that plaintiff complete relief," *id.* at 852–53; the plaintiffs "remain protected by the preliminary injunctions to the extent necessary and appropriate to afford them complete relief," *id.* at 861; and the lower courts were directed to "move expeditiously to ensure that, with respect to each plaintiff, the injunctions comport with this rule and otherwise comply with principles of equity," *id.* An injunction prohibiting the application of Mich. Comp. Laws § 15.243(1)(v) to the Plaintiff's requests affords the Plaintiff complete relief.

22. District courts "may award" "plaintiff-specific relief," *id.* at 868 (Kavanaugh, J., concurring), and are required to "follow proper legal procedures when awarding such relief," *id.* at 869. "By law, federal courts are open and can receive and review applications for relief 24/7/365." *Id.* at 876 (citing 28 U.S.C. § 452 ("All courts of the United States shall be deemed always open for the purpose of filing proper papers, issuing and returning process, and making motions and orders.")).

## Factual Allegations

### The request

23. On July 31, 2026 the Plaintiff submitted a written request under Mich. Comp. Laws § 15.235(1) to the University of Michigan through MuckRock, a public records service. The request and the University of Michigan's responses are public at https://www.muckrock.com/foi/michigan-117/outside-counsel-engagement-and-billing-records-barnes-thornburg-llp-2026-216899/. The body of the request read:

> Pursuant to the Michigan Freedom of Information Act, I hereby

request the following records:

1. All engagement letters, retention agreements, amendments, rate schedules, and outside-counsel guidelines between the University of Michigan (including its Regents and its Office of the Vice President and General Counsel) and the law firm Barnes & Thornburg LLP, for the period June 1, 2026, through the date of your response.
2. All invoices, billing statements, fee statements, and statements of account submitted by Barnes & Thornburg LLP to the University during that period concerning any of the following matters, or any related proceeding: In re Nadja Yang, No. 26-30507 WJL (Bankr. N.D. Cal.) (chapter 7 case); Yang v. Regents of the University of Michigan (In re Yang), No. 3:26-cv-07302-WHO (N.D. Cal.) (withdrawal of the reference); Yang v. Regents of the University of Michigan (In re Yang), No. 3:26-cv-07259-WHO (N.D. Cal.) (appeal); and Yang v. Lynch (In re Yang), Adv. No. 26-03032 (Bankr. N.D. Cal.) (adversary proceeding).
3. All records of payment, payment vouchers, disbursement records, and payment approvals corresponding to the invoices described in item 2.
4. Records sufficient to show the authorization or approval of the engagement of Barnes & Thornburg LLP for the matters described in item 2, including the identity of the approving office or officer.
5. Records sufficient to show the total amounts billed and the total amounts paid to Barnes & Thornburg LLP for the matters described in item 2 as of the date of your response.

If any responsive record contains exempt material, MCL 15.244(1)

requires that the exempt and nonexempt material be separated and the nonexempt material made available. For any billing record as to which privilege is asserted, please redact the narrative descriptions claimed to be privileged and produce the remaining nonexempt content — including dates, timekeeper names and titles, hours, rates, line-item amounts, totals, and payment information — rather than withholding any document in full, and please describe any material separated or deleted, as the Act requires.

Please include the detailed fee itemization required by MCL 15.234 with any fee notice. If any responsive record is already available on a University website, please identify the specific webpage address in lieu of copying charges. Searchable PDF and rolling production are preferred.

The requested documents will be made available to the general public, and this request is not being made for commercial purposes. In the event that there are fees, I would be grateful if you would inform me of the total charges in advance of fulfilling my request. I would prefer the request filled electronically, by e-mail attachment if available or CD-ROM if not.

Thank you in advance for your anticipated cooperation in this matter. I look forward to receiving your response to this request within 5 business days, as the statute requires.

**The University of Michigan's responses**

24. On August 7, 2026 MuckRock sent a follow-up on the Plaintiff's behalf. On August 10, 2026 Matthew Riggs, signing as "FOIA Compliance Specialist Associate," wrote for the University of Michigan acknowledging a request "dated August 1, 2026, which was received on August 3, 2026," paragraph 23, and, "[d]ue to the large number of requests currently being processed by this office," extended

its time to respond to August 24, 2026, under Mich. Comp. Laws § 15.235(2)(d).

25. On August 24, 2026, the last day of the extended period, Tracey Piercecchi, signing as "FOIA Coordinator" for Defendant the Regents of the University of Michigan, denied the request in full: "Your request is denied pursuant to Section 13 (1) (v) of the Michigan Freedom of Information Act, which exempts from disclosure 'records or information relating to a civil action in which the requesting party and the public body are parties.'" The letter reproduced the request in full, including the docket numbers of the matters in this District. It identified no other exemption. It did not assert the attorney-client privilege, Mich. Comp. Laws § 15.243(1)(g), or any other privilege, *id.* § 15.243(1)(h). It separated no material and produced no record. *Id.* § 15.244.

26. Ms. Piercecchi's letter advised the Plaintiff that "within 180 days from the date of this letter, you have the right to appeal the denial of information to the President of the University or seek judicial review in the court of claims to try to compel disclosure," directed any appeal to the "President's Office" in care of Steve Yaros, and closed with a description of the damages available against the University of Michigan: "In addition to actual and compensatory damages, you will be awarded punitive damages in the amount of $1,000.00 if the court finds that the University was arbitrary and capricious in its denial."

**The exemption**

27. Mich. Comp. Laws § 15.232(i) "separates public records into the following 2 classes": "[t]hose that are exempt from disclosure under section 13" and "[a]ll public records that are not exempt from disclosure under section 13 and that are subject to disclosure under this act." A "person" entitled to request them "means an individual, corporation, limited liability company, partnership, firm, organization, association, governmental entity, or other legal entity," excluding only persons serving a sentence of imprisonment. *Id.* § 15.232(g). Section 15.243(1) lists the exemptions, (a) through (cc). Section 15.243(1)

(g) exempts "[i]nformation or records subject to the attorney-client privilege." Section 15.243(1)(h) exempts information or records subject to other privileges "recognized by statute or court rule." Section 15.243(1)(v) exempts "[r]ecords or information relating to a civil action in which the requesting party and the public body are parties."

28. Under 1976 Mich. Pub. Acts No. 442, "initial as well as future uses of information requested under FOIA are irrelevant in determining whether the information falls within exemption, as is the identity of the person seeking the information." *Taylor v. Lansing Board of Water & Light*, 272 Mich. App. 200, 205 (2006) (per curiam) (Fort Hood, P.J., and Cavanagh and Servitto, JJ.). Section 15.243(1)(v) turns on the identity of the requester. In *Taylor*, Virginia Cluley, exercising the right to petition, "one of 'the most precious of the liberties safeguarded by the Bill of Rights,'" *BE&K Construction Co. v. NLRB*, 536 U.S. 516, 524 (2002) (quoting *United Mine Workers v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967)), had sued the Lansing Board of Water and Light, "a public body," in "the civil lawsuit of Cluley v. Lansing Board of Water and Light," 272 Mich. App. at 202, and Joni Taylor, "the admitted best friend of Ms. Cluley," *id.* at 206, exercising the entitlement of "all persons" to "full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees," *id.* at 204 (quoting Mich. Comp. Laws § 15.231(2)), had requested the Board's records, *id.* at 202. The right to petition "extends to all departments of the Government." *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972). The Board denied the request on the ground that "you are acting as the Plaintiffs' agent and on their behalf in requesting the documents," 272 Mich. App. at 202, and argued that the request "was an attempt to circumvent the discovery rules governing the Cluley action," *id.* at 202–03. The Michigan Court of Appeals apparently regarded the exercise of the entitlement of Mich. Comp. Laws § 15.231(2) by the "admitted best friend" of a person litigating

against "a public body" as a means of "easily avoiding the exemption," and the result as "distasteful." *Id.* at 202, 206–07. It was "well aware that a literal application of the statutory language leads to an absurd result in this matter": the attorney who prepared the request was "none other than Ms. Cluley's trial counsel in the Cluley litigation"; "[i]t could be inferred, then, that plaintiff was merely an instrument through which Ms. Cluley sought to gain information concerning the Cluley lawsuit"; and "[t]he literal application of the statute, then, would allow a party to obtain information by proxy that he or she would otherwise not be entitled to receive through FOIA, thereby easily avoiding the exemption." *Id.* at 206–07. What restrained the court was Black's Law Dictionary, *id.* at 206, and the Supreme Court of Michigan, which "has determined that the 'absurd result' rule applies only when statutes are ambiguous," *id.* at 207. "While defendant may disagree with the restrictive language of the exemption at issue and the result of its application, our Legislature has elected to make it so. And however distasteful [sic] the result in this case may be to this Court, it does not give us license to avoid applying the unambiguous language of the statute. We thus affirm the trial court's order that the documents are not exempt from disclosure under FOIA." *Id.* The court also reversed the trial court's exclusion of the requested personnel records, for which it "was unable to locate any provision in FOIA specifically exempting" them. *Id.* at 208. 1976 Mich. Pub. Acts No. 442 "does not conflict with the court rules governing discovery, nor does it supplement or displace them." *Id.* at 205 (describing *Central Michigan University Supervisory-Technical Ass'n v. Central Michigan University Board of Trustees*, 223 Mich. App. 727, 730 (1997)). The opinion does not mention the Constitution of the United States.

**The records**

29. The records requested include the terms on which the University of Michigan retained outside counsel and the amounts it disbursed to them. They are "writing[s] prepared, owned, used, in the possession of, or retained by a public

body in the performance of an official function." Mich. Comp. Laws § 15.232(i). The statute that governs the Regents of the University of Michigan directs it to exhibit each year "the amount of receipts and expenditures" of the University of Michigan, and provides that the report "shall be made available to the public in compliance with Act No. 442 of the Public Acts of 1976." Mich. Comp. Laws § 390.15.

**Count I**

**Deprivation of Rights Secured by the First and Fourteenth Amendments**

**42 U.S.C. § 1983 — Facial Challenge to Mich. Comp. Laws § 15.243(1)(v)**

30. The Plaintiff realleges paragraphs 1 through 29.

31. The First Amendment guarantees "the rights to speak, worship, publish, assemble, and petition their government freely." *First Choice*, 608 U.S. at ___ (slip op., at 6). Its text secures "the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. The Fourteenth Amendment provides: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." *Id.* amend. XIV, § 1. The rights so secured against Michigan include the right of access to the courts, which "is indeed but one aspect of the right of petition." *California Motor Transport*, 404 U.S. at 510. The Petition Clause "protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes." *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387 (2011). That right is exercised by every person who participates as a party in a civil proceeding.

32. Michigan's "freedom of information act," 1976 Mich. Pub. Acts No. 442,

extends its entitlement to "all persons," Mich. Comp. Laws § 15.231(2), each of whom "has a right to inspect, copy, or receive copies of the requested public record," *id.* § 15.233(1). Section 15.243(1)(v) permits a public body to withhold "[r]ecords or information relating to a civil action in which the requesting party and the public body are parties." The provision expressly classifies requesters by whether "the requesting party and the public body are parties" to "a civil action," Mich. Comp. Laws § 15.243(1)(v), and authorizes the public body, at its option, to withhold public records from the persons so classified.

33. The government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests," for "if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited." *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). The rule holds "even if he has no entitlement to that benefit," *Board of County Commissioners v. Umbehr*, 518 U.S. 668, 674 (1996). In *Speiser* the benefit was a tax exemption: "To deny an exemption to claimants who engage in certain forms of speech is in effect to penalize them for such speech. Its deterrent effect is the same as if the State were to fine them for this speech." *Speiser v. Randall*, 357 U.S. 513, 518 (1958). The Declaration of Right declared that "all Commitments and Prosecutions for such Petitioning are Illegall." 1 W. & M., ch. 2 (1689), quoted in *Guarnieri*, 564 U.S. at 396.

34. Had the county in *Umbehr* "exercised sovereign power against him as a citizen in response to his political speech, it would be required to demonstrate that its action was narrowly tailored to serve a compelling governmental interest." *Umbehr*, 518 U.S. at 678. A policy that "expressly discriminates against otherwise eligible recipients by disqualifying them from a public benefit solely because of their religious character" "imposes a penalty on the free exercise of religion that triggers the most exacting scrutiny." *Trinity Lutheran Church of*

*Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2021 (2017). Wisconsin's exemption of religious employers from its unemployment compensation taxes, as construed by the Wisconsin Supreme Court to reach only organizations "that engage in proselytization or serve only co-religionists," was "not, on its face, 'available on an equal basis' to all denominations," and "[t]hat type of 'explicit' distinction between religious practices is what [the Supreme] Court has deemed subject to strict scrutiny, including in the context of religious exemptions." *Catholic Charities Bureau, Inc. v. Wisconsin Labor & Industry Review Commission*, 605 U.S. 238, 251 (2025). Those decisions concern the free exercise of religion; Mich. Comp. Laws § 15.243(1)(v) sorts the beneficiaries of 1976 Mich. Pub. Acts No. 442, transparently, by their exercise of the right to petition. The Equal Protection Clause, "closely intertwined with First Amendment interests," *Police Department of Chicago v. Mosley*, 408 U.S. 92, 94–95 (1972), "requires that statutes affecting First Amendment interests be narrowly tailored to their legitimate objectives," *id.* at 101.

35. Michigan "bears the burden of clearing that high bar." *Catholic Charities*, 605 U.S. at 252. A classification whose criterion is the exercise of the right is not a means of serving an interest but a burden on the right itself, and discrimination against persons for exercising a right the First Amendment secures is not, by any description, "a state interest of the highest order." *Trinity Lutheran*, 137 S. Ct. at 2024 (internal quotation marks omitted).

36. Section 15.243(1)(v) is invalid on its face. Its only operation is to permit a public body to withhold a record on the ground that "the requesting party and the public body are parties" to "a civil action." "The proper focus of the constitutional inquiry is the group for whom the law is a restriction, not the group for whom the law is irrelevant." *City of Los Angeles v. Patel*, 576 U.S. ___, ___ (2015) (slip op., at 8) (internal quotation marks omitted). In a First Amendment facial challenge the question is whether "a substantial number of [the law's]

applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Moody v. NetChoice, LLC*, 603 U.S. ___, ___ (2024) (slip op., at 9) (internal quotation marks omitted). Section 15.243(1)(v) is plainly invalid under that standard. A requester outside the class is not subject to it. *Cf. Olivier v. City of Brandon*, 607 U.S. ___, ___ (2026) (slip op., at 12) ("Let's name this citizen Laurence and say that he boasts a clean police record.").

37. The Regents of the University of Michigan, acting under color of Mich. Comp. Laws § 15.243(1)(v), subjected the Plaintiff to the deprivation of rights secured by the First and Fourteenth Amendments, and is "liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983. The court "may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." *Id.* § 1988(b). The classification appears on the face of the statute, and Tracey Piercecchi's letter of August 24, 2026 recites it as the ground of decision. Paragraph 25. In *Trinity Lutheran* the consequence of the State's policy was "in all likelihood, a few extra scraped knees," and the exclusion was "odious to our Constitution all the same." *Trinity Lutheran*, 137 S. Ct. at 2024–25.

**Count II**

**Michigan Freedom of Information Act**

**Mich. Comp. Laws § 15.240**

38. The Plaintiff realleges paragraphs 1 through 29.

39. The Regents of the University of Michigan is a public body. Mich. Comp. Laws § 15.232(h). An entity "can count as part of the State for some but not 'other purposes,'" *Galette*, 607 U.S. at ___ (slip op., at 22) (quoting *Biden v. Nebraska*, 600 U.S. 477, 494 n.3 (2023)), as Amtrak is "part of the Government for purposes of the First Amendment" but lacks the Government's "sovereign immunity," *id.*

(describing *Lebron v. National Railroad Passenger Corp.*, 513 U.S. 374 (1995)). The records requested are public records. Mich. Comp. Laws § 15.232(i). The request was a written request. *Id.* § 15.232(m). Tracey Piercecchi's letter of August 24, 2026 was the University of Michigan's final determination to deny it. *Id.* §§ 15.235(5), 15.240(1).

40. The burden is on the University of Michigan to sustain its denial. Mich. Comp. Laws § 15.240(4). 1976 Mich. Pub. Acts No. 442 "mandates a policy of full disclosure"; its exemptions "must be narrowly construed, and the party seeking to invoke an exemption must prove that nondisclosure is in accord with the intent of the Legislature." *Taylor*, 272 Mich. App. at 204–05. The University of Michigan invoked one exemption. A denial whose stated authority is a provision that violates the First Amendment cannot be sustained, because "[t]he Judges in every State" are bound by the Constitution of the United States "any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2; *Doe v. Dynamic Physical Therapy, LLC*, 607 U.S. ___, ___ (2025) (per curiam) (slip op., at 1). Under Mich. Comp. Laws § 15.233(1), a withholding without a sustainable exemption is a withholding without authority.

41. The University of Michigan asserted no other exemption and no privilege. The request asked that, "[f]or any billing record as to which privilege is asserted," the University of Michigan "redact the narrative descriptions claimed to be privileged and produce the remaining nonexempt content — including dates, timekeeper names and titles, hours, rates, line-item amounts, totals, and payment information — rather than withholding any document in full," and that it "describe any material separated or deleted, as the Act requires." Paragraph 23 Mich. Comp. Laws § 15.244(1).

42. Upon determining that the records are not exempt, the court "*shall* order the public body to cease withholding or to produce all or a portion of a public record wrongfully withheld, regardless of the location of the public record," and

"[f]ailure to comply with an order of the court may be punished as contempt of court." Mich. Comp. Laws § 15.240(4) (emphasis added).

43. The denial was arbitrary and capricious. Its only stated ground was Mich. Comp. Laws § 15.243(1)(v), which exempts "[r]ecords or information relating to a civil action in which the requesting party and the public body are parties." Paragraph 25. The exemption classifies requesters by whether "the requesting party and the public body are parties" to "a civil action," and its only operation is to withhold public records from the persons so classified. *See* Count I. A refusal whose ground is "a basis that infringes [her] constitutionally protected interests," *Perry*, 408 U.S. at 597, rests on no ground the law recognizes. It is arbitrary and capricious as a matter of course. The Plaintiff is entitled to punitive damages of $1,000.00, Mich. Comp. Laws § 15.240(7),[3] and to her "reasonable attorneys' fees, costs, and disbursements," *id.* § 15.240(6). Section 15.240(7) also requires the court to "order the public body to pay a civil fine of $1,000.00, which shall be deposited into the general fund of the state treasury." A public body that "willfully and intentionally failed to comply with this act or otherwise acted in bad faith" must pay, "in addition to any other award or sanction, a civil fine of not less than $2,500.00 or more than $7,500.00 for each occurrence," likewise "deposited in the general fund of the state treasury." *Id.* § 15.240b. The provision on which the University of Michigan relied "is not a law; it confers no rights; it imposes no duties; it affords no protection; . . . it is, in legal contemplation, as inoperative

[3]Tracey Piercecchi, signing as "FOIA Coordinator" for Defendant the Regents of the University of Michigan, wrote in the letter of August 24, 2026 that if the Plaintiff were to "seek judicial review in the Michigan court of claims and prevail, you will be awarded reasonable attorney's fees, costs and disbursements incurred in maintaining the action," and that "[i]n addition to actual and compensatory damages, you will be awarded punitive damages in the amount of $1,000.00 if the court finds that the University was arbitrary and capricious in its denial." Paragraph 26. For the balance of Section 10, without mention of any civil fine, the letter referred the Plaintiff to a copy "available for your reference and review online." *Freedom of Information Act Right to Appeal*, U-M FOIA Office, https://web.archive.org/web/20260924142541/https://foia.vpcomm.umich.edu/foia-right-to-appeal/. The copy reproduces subsection (7), which orders its fine upon "refusal or delay in disclosing or providing copies of a pubic record [sic]."

as though it had never been passed." *Norton v. Shelby County*, 118 U.S. 425, 442 (1886). The University of Michigan willfully and intentionally withheld the requested public records in their entirety.

## Prayer for Relief

WHEREFORE, the Plaintiff requests that the Court enter judgment in her favor on each count and:

A. **Declare** that Mich. Comp. Laws § 15.243(1)(v) is invalid on its face under the First and Fourteenth Amendments to the Constitution of the United States;

B. **Permanently enjoin** the Regents of the University of Michigan from applying Mich. Comp. Laws § 15.243(1)(v) to any request made under Mich. Comp. Laws § 15.231 *et seq.* by the Plaintiff or on her behalf;

C. **Award** the Plaintiff nominal damages of $0.67 on Count I;

D. **Order** the Regents of the University of Michigan, under Mich. Comp. Laws § 15.240(4), to cease withholding and to produce the records requested on July 31, 2026, separating any exempt material and describing what is separated as Mich. Comp. Laws §§ 15.235(5)(c) and 15.244 require;

E. **Award** the Plaintiff punitive damages of $1,000.00 on Count II, Mich. Comp. Laws § 15.240(7);

F. **Order** the Regents of the University of Michigan to pay a civil fine of $1,000.00 to the general fund of the state treasury of the State of Michigan, Mich. Comp. Laws § 15.240(7);

G. **Order** the Regents of the University of Michigan to pay a further civil fine of not less than $2,500.00 nor more than $7,500.00 for the denial of August 24, 2026, to the general fund of the state treasury of the State of Michigan, Mich. Comp. Laws § 15.240b;

H. **Award** the Plaintiff her reasonable attorney's fees, costs, and

disbursements, 42 U.S.C. § 1988(b); Mich. Comp. Laws § 15.240(6); Fed. R. Civ. P. 54(d);

I. **Retain** jurisdiction to enforce the decree, including by contempt, Mich. Comp. Laws § 15.240(4); and

J. **Grant** such other relief as is just.

## Demand for Jury Trial

Mich. Comp. Laws § 15.240(4) provides that "[t]he court shall determine the matter de novo." Michigan's instruction to its own courts notwithstanding, "the right to a jury trial in the federal courts is to be determined as a matter of federal law in diversity as well as other actions." *Simler v. Conner*, 372 U.S. 221, 222 (1963) (per curiam). "The federal policy favoring jury trials is of historic and continuing strength." *Id. See Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 355 (1998) (statutory damages). The Plaintiff demands trial by jury of all issues so triable. Fed. R. Civ. P. 38(b).

Dated: September 24, 2026

Respectfully submitted,

/s/ Chi

Chi, Plaintiff *pro se*

`Assisted-by: Claude Fable 5.1 via Claude Code`

## Verification

I, Chi, verify under penalty of perjury that the factual allegations of the foregoing complaint are true and correct, except those stated on information and belief, which I believe to be true. 28 U.S.C. § 1746. Executed on September 24,

2026.

Dated: September 24, 2026

/s/ Chi

Chi, Plaintiff *pro se*