kai
200 E Liberty St Lbby Unit 7760
Ann Arbor MI 48107
M: Nadja Yang <nadja@njy.dev>
C: tel:332.203.3124
also known as Chi, Plaintiff *pro se*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

San Francisco Division

CHI,

*Plaintiff,*

v.

REGENTS OF THE UNIVERSITY OF MICHIGAN,

*Defendant.*

Case No. 3:26-cv-11021-EMC

The Honorable Edward M. Chen

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR A PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES**

Fed. R. Civ. P. 65(a); Civil L.R. 7-2

Hearing: December 3, 2026, 1:30 p.m.

By Zoom videoconference

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE that on Thursday, December 3, 2026, at 1:30 p.m., or as soon thereafter as the matter may be heard, by Zoom videoconference or as the Court may otherwise direct, before the Honorable Edward M. Chen, United States District Judge, United States Courthouse, 450 Golden Gate Avenue, San Francisco, California, Plaintiff Chi will and hereby does move the Court for a preliminary injunction under Rule 65(a) of the Federal Rules of Civil Procedure. The motion rests on this notice, the memorandum of points and authorities that follows, the printout filed with it, the verified complaint (ECF No. 1), the record of the action, and whatever argument the Court may hear.

Plaintiff asks for an order that, until final judgment in this action or further order of the Court: (1) enjoins Defendant Regents of the University of Michigan, its officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, from invoking, applying, or relying upon Mich. Comp. Laws § 15.243(1)(v) to deny, in whole or in part, any request made by or on behalf of Plaintiff Chi, also known as kai and as Nadja Yang, under the Michigan Freedom of Information Act, 1976 Mich. Pub. Acts No. 442; (2) orders Defendant to cease withholding, in reliance on § 15.243(1)(v), the public records responsive to Plaintiff's request of July 31, 2026, the University's Request 270260, Mich. Comp. Laws § 15.240(4); and (3) dispenses with security under Rule 65(c).

# Memorandum of Points and Authorities

## 1 Issues

1. Whether Plaintiff is likely to succeed on Count I: whether Mich. Comp. Laws § 15.243(1)(v), which permits a public body to withhold otherwise available public records from a requester because "the requesting party and the public body are parties" to "a civil action," denies a public benefit on the basis of the exercise of the right to petition, in violation of the First and Fourteenth Amendments, on its face.
2. Whether Plaintiff is likely to succeed on Count II: whether, the only exemption invoked for the denial of her request being one the Regents may not constitutionally apply to her, the Regents must cease withholding the records. Mich. Comp. Laws § 15.240(4).
3. Whether Plaintiff is likely to suffer irreparable harm without an injunction, and whether the balance of equities and the public interest favor one.
4. What form the injunction should take, and whether security under Rule 65(c) should be dispensed with.

## 2 Facts

The Michigan Freedom of Information Act declares it "the public policy of this state that all persons, except those persons incarcerated in state or local correctional facilities, are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees." Mich. Comp. Laws § 15.231(2); Compl. ¶ 2, at 2. "Except as expressly provided in section 13," a person who gives a public body's FOIA coordinator a written request describing a public record "has a right to inspect, copy, or receive copies of the requested public record of the public body." *Id.* § 15.233(1). Section 13 lists what "[a] public body may exempt from disclosure," *id.* § 15.243(1), and among its subdivisions is this one: "(v) Records or information relating to a civil action in which the requesting party and the public body are parties." *Id.* § 15.243(1)(v); Compl. ¶ 27, at 15–16. The Regents of the University of

Michigan is a "public body." *Id.* § 15.232(h); Compl. ¶ 5, at 3.

Plaintiff Chi, also known as kai[1] and as Nadja Yang, "is a natural person. She is an undergraduate student of the University of Michigan, registered for the Fall 2026 academic term, studying in the honors mathematics program." Compl. ¶ 4, at 3. On July 31, 2026 she requested from the University of Michigan, through MuckRock, the public records service of MuckRock Foundation Incorporated of Boston, Massachusetts, https://www.muckrock.com/, the engagement and billing records of Barnes & Thornburg LLP in four matters in this Court and in the Bankruptcy Court of this District. Compl. ¶ 23, at 12–13 (setting out the request); Printout at 1–3 (the printout filed with this motion under the description "MuckRock printout of University of Michigan FOIA Request 270260 (MuckRock No. 216899), printed October 26, 2026"). The request and the University of Michigan's responses are public at https://www.muckrock.com/foi/michigan-117/outside-counsel-engagement-and-billing-records-barnes-thornburg-llp-2026-216899/. Compl. ¶ 23, at 12; Printout at 1. On August 10 Matthew Riggs, FOIA Compliance Specialist Associate of the University of Michigan, wrote that "[d]ue to the large number of requests currently being processed by this office, it will not be possible to respond to this request within the five-day period accorded by the Michigan Freedom of Information Act," and took the ten business days the Act allows. Mich. Comp. Laws § 15.235(2)(d); Printout at 4. On August 24, 2026, the last of them, Tracey Piercecchi, its FOIA Coordinator, denied the request in full: "Your request is denied pursuant to Section 13 (1) (v) of the Michigan Freedom of Information Act, which exempts from disclosure 'records or information relating to a civil action in which the requesting party and the public body are parties.'" Compl. ¶¶ 24–25, at 14–15; Printout at 4–5. The letter asserted no other exemption and no privilege, separated nothing, and produced nothing. Compl. ¶ 25, at

[1] *See, e.g.*, kai, *Resolvable 4-GDDs of type $2^u$ exist for all $u \equiv 4 \pmod 6$ except 4 and 10*, Zenodo (Oct. 25, 2026) (first amended version), https://doi.org/10.5281/zenodo.23578875 (constructing 4-RGDDs of type $2^u$ for the nine possible exceptions $u \in \{46, 70, 82, 94, 100, 118, 130, 202, 214\}$ of Wei and Ge (2017) and Miller, Valkov, and Abel (2026), so that a 4-RGDD of type $2^u$ exists if and only if $u \equiv 4 \pmod 6$ and $u \notin \{4, 10\}$).

15; Printout at 5–6. It advised Plaintiff of her right “to appeal the denial of information to the President of the University or seek judicial review in the court of claims to try to compel disclosure,” and that “[i]n addition to actual and compensatory damages, you will be awarded punitive damages in the amount of $1,000.00 if the court finds that the University was arbitrary and capricious in its denial.” Printout at 6.

Plaintiff filed this action on September 28, 2026, ECF No. 1, filed notice of the constitutional question two days later, ECF No. 4, and served the notice and the complaint on the Attorney General of Michigan by certified mail on October 2, 2026. ECF No. 9; Fed. R. Civ. P. 5.1(a)(2). On October 1, 2026 she wrote to Ms. Piercecchi, enclosed the summons, ECF No. 2, and a copy of the complaint, ECF No. 1, stated that she intended to move for a preliminary injunction, and proposed instead, “[i]n the interest of conserving the resources of the Court and of the parties,” a stipulated order under which, pending the final disposition of the action, the Regents of the University of Michigan would not invoke § 15.243(1)(v) in responding to requests under the Act and would process Request 270260 on that basis. She asked for the University of Michigan’s position by October 8, 2026. Printout at 7. The Regents of the University of Michigan was served on October 7, 2026, ECF No. 8, and, through Amy C. Poyer of Barnes & Thornburg LLP, stipulated that it “requires more time to evaluate its response to Plaintiff’s Complaint,” ECF No. 10 ¶ 4, and that its “deadline to file a responsive pleading is continued to November 27, 2026,” *id.* at 3.

## 3 Standard

A preliminary injunction issues to a plaintiff who shows “that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.” *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). It is “an extraordinary remedy never awarded as of right”; the court “must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief,” with “particular regard for the public

consequences." *Id.* at 24 (internal quotation marks omitted). The last two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). In this Circuit the factors are weighed on a sliding scale: "serious questions going to the merits" and a balance of hardships that "tips sharply" toward the plaintiff will support an injunction "so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

The burden on the merits lies where it would lie at trial. "As the Government bears the burden of proof on the ultimate question of [the statute's] constitutionality, respondents must be deemed likely to prevail unless the Government has shown" otherwise. *Ashcroft v. American Civil Liberties Union*, 542 U.S. 656, 666 (2004). "The point remains that the burdens at the preliminary injunction stage track the burdens at trial." *Gonzales v. O Centro Espírita Beneficente União do Vegetal*, 546 U.S. 418, 429 (2006). So "in the First Amendment context, the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction." *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1116 (9th Cir. 2011). Michigan allocates the burden on Count II the same way: in an action to compel disclosure "the burden is on the public body to sustain its denial." Mich. Comp. Laws § 15.240(4). The verified complaint "may be treated as an affidavit, and, as such, it is evidence that may support injunctive relief." *Id.* at 1116.

## 4 Likelihood of success

"A different, and more difficult, question is presented when the State makes information generally available, but denies access to a small disfavored class." *Los Angeles Police Department v. United Reporting Publishing Corp.*, 528 U.S. 32, 45–46 (1999) (Stevens, J., dissenting). The Supreme Court held only that a facial overbreadth attack does not lie against what is "simply a law regulating access to information in the hands of the police department," *id.* at 40–41, a law that, as Justice Scalia put it,

"subjects no speaker to the risk of prosecution," *id.* at 42 (Scalia, J., concurring), and did not pass on the requester's equal protection challenge, *id.* at 40 n.2.

Justice Scalia, joined by Justice Thomas, thought it "an entirely different question whether a restriction upon access that allows access to the press (which in effect makes the information part of the public domain), but at the same time denies access to persons who wish to use the information for certain speech purposes, is in reality a restriction upon speech rather than upon access to government information." *Id.* at 42. Justice Ginsburg, joined by Justices O'Connor, Souter, and Breyer, wrote that "once a State decides to make such a benefit available to the public, there are no doubt limits to its freedom to decide how that benefit will be distributed. California could not, for example, release address information only to those whose political views were in line with the party in power." *Id.* at 43 (Ginsburg, J., concurring) (citing *Board of County Commissioners v. Umbehr*, 518 U.S. 668 (1996)). Justice Stevens, joined by Justice Kennedy, would have decided it: where "the State's discrimination is based on its desire to prevent the information from being used for constitutionally protected purposes, I think it must assume the burden of justifying its conduct," *id.* at 46 (Stevens, J., dissenting), because "even though government may withhold a particular benefit entirely, it 'may not deny a benefit to a person on a basis that infringes his constitutionally protected interests,'" *id.* at 47–48 (quoting *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)). *United Reporting* "is thus a case about the availability of facial challenges," in which "[t]he Court did not rule on the merits of any First Amendment claim"; its "separate writings," "joined by eight Justices," "[a]ll . . . recognized that restrictions on the disclosure of government-held information can facilitate or burden the expression of potential recipients and so transgress the First Amendment." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 568, 569 (2011).

### 4.1 The classification

A public body may withhold "[r]ecords or information relating to a civil action in which the requesting party and the public body are parties." Mich. Comp. Laws §

15.243(1)(v). The benefit it withdraws is the one the Act confers on "all persons," *id.* § 15.231(2), each of whom "has a right to inspect, copy, or receive copies of the requested public record," *id.* § 15.233(1). "The Constitution does no more than assure the public and the press equal access once government has opened its doors." *Houchins v. KQED, Inc.*, 438 U.S. 1, 16 (1978) (Stewart, J., concurring in judgment).

The fact that defines the class is the exercise of a right the First Amendment names. The Petition Clause "protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes," and "[t]he right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government." *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387 (2011) (quoting *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 896–97 (1984)); Compl. ¶ 31, at 18. What § 15.243(1)(v) penalizes is ongoing participation in a civil proceeding. "The right of access to the courts is indeed but one aspect of the right of petition," *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972); *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741 (1983), and the Supreme Court has found that right in the Privileges and Immunities Clause of Article IV and in the Due Process and Equal Protection Clauses as well. *Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002).

The State "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests," for "if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited," and the government would "produce a result which [it] could not command directly." *Perry*, 408 U.S. at 597 (quoting *Speiser v. Randall*, 357 U.S. 513, 526 (1958)). The rule holds "even if he has no entitlement to that benefit." *Umbehr*, 518 U.S. at 674. "To deny an exemption to claimants who engage in certain forms of speech is in effect to penalize them for such speech. Its deterrent effect is the same as if the State were to fine them for this speech." *Speiser*, 357 U.S. at 518. "Rights are infringed both where the government fines a person a penny for being a Republican and where it withholds the grant of a penny for

the same reason." *Elrod v. Burns*, 427 U.S. 347, 359–60 n.13 (1976) (plurality opinion). The principle reaches "conditions on public benefits, in the form of jobs or otherwise, which dampen the exercise generally of First Amendment rights, however slight the inducement to the individual to forsake those rights." *Id.* at 358–59 n.11.

In *United Reporting* California sorted requesters by what they said they would do with the information. Michigan sorts them by whether "the requesting party and the public body are parties" to "a civil action," Mich. Comp. Laws § 15.243(1)(v): by ongoing participation in a civil proceeding, which the Petition Clause protects. Section 15.243(1)(v) presents Justice Stevens's "different, and more difficult, question": the small disfavored class is defined by the fact of petitioning. "[A] significant impairment of First Amendment rights must survive exacting scrutiny"; "[t]he interest advanced must be paramount, one of vital importance, and the burden is on the government to show the existence of such an interest." *Elrod*, 427 U.S. at 362 (plurality opinion). Where the government has "exercised sovereign power against [a person] as a citizen" in response to protected activity, "it would be required to demonstrate that its action was narrowly tailored to serve a compelling governmental interest." *Umbehr*, 518 U.S. at 678. The Regents here is neither employer nor contractor. The Supreme Court's precedents "span a spectrum from government employees, whose close relationship with the government requires a balancing of important free speech and government interests, to claimants for tax exemptions, . . . users of public facilities, . . . and recipients of small government subsidies, . . . who are much less dependent on the government but more like ordinary citizens whose viewpoints on matters of public concern the government has no legitimate interest in repressing." *Id.* at 680 (citations omitted). A requester of public records stands at that end of the spectrum. "The First Amendment permits neither the firing of janitors nor the discriminatory pricing of state lottery tickets based on the government's disagreement with certain political expression." *Id.*

Nor does the Petition Clause ask less than the Speech Clause of a State that acts as sovereign. "The Petition Clause undoubtedly does have force and application in the

context of a personal grievance addressed to the government," and "[o]utside the public employment context, constitutional protection for petitions does not necessarily turn on whether those petitions relate to a matter of public concern." *Guarnieri*, 564 U.S. at 394. Where the Supreme Court has allowed the government room to answer a petition with an adverse act, it has been as an employer, because "government has significantly greater leeway in its dealings with citizen employees than it does when it brings its sovereign power to bear on citizens at large." *Id.* at 392 (quoting *Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591, 599 (2008)). Section 15.243(1)(v) is sovereign power brought to bear on citizens at large. It is a statute, administered by a public body, against a member of the public, and what it authorizes is retaliation for petitioning. The Declaration of Right of 1689 declared "that it is the Right of the Subjects to petition the King and all Commitments and Prosecutions for such Petitioning are Illegall." *Id.* at 396 (quoting 1 W. & M., ch. 2, 6 Statutes of the Realm 143). Michigan classifies requesters by the exercise of the right to petition, for as long as the petition is pending, and commits the application of the exemption to the discretion of the public body, which is what *Speiser*, *Perry*, and *Elrod* forbid. The vice is in the classification, and it does not depend on anyone's motive or on the facts of any request. "[R]egardless of how evenhandedly these restraints may operate in the long run, . . . protected interests are still infringed and thus the violation remains." *Elrod*, 427 U.S. at 359–60 (plurality opinion).

**4.2 No compelling interest**

A policy that "expressly discriminates against otherwise eligible recipients by disqualifying them from a public benefit solely because of their religious character" "imposes a penalty on the free exercise of religion that triggers the most exacting scrutiny." *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 462 (2017) (cited in Compl. ¶¶ 34–35, 37, at 19–21, as 137 S. Ct. 2012). An exemption whose "eligibility . . . ultimately turns on inherently religious choices," rather than on secular criteria that happen to fall unevenly, draws the kind of "'explicit' distinction" that "[the Supreme] Court has deemed subject to strict scrutiny, including in the context of

religious exemptions." *Catholic Charities Bureau, Inc. v. Wisconsin Labor & Industry Review Commission*, 605 U.S. 238, 250–51 (2025). Those cases concern religion; the principle is the First Amendment's. Eligibility under § 15.243(1)(v) turns on one fact, that "the requesting party and the public body are parties" to "a civil action," which is the exercise of the right the Petition Clause secures, and the distinction is explicit. "The State bears the burden of clearing that high bar." *Id.* at 252. It bears it at this stage, *O Centro*, 546 U.S. at 429, and under its own statute, Mich. Comp. Laws § 15.240(4).

Neither the Regents of the University of Michigan nor the statute has named the interest. Confidential litigation material is exempt already, for every requester: "[i]nformation or records subject to the attorney-client privilege," *id.* § 15.243(1)(g), and records subject to any "other privilege recognized by statute or court rule," *id.* § 15.243(1)(h). The denial here invoked neither. Printout at 5–6. Nor does subdivision (v) guard the discovery process. The Act "does not conflict with the court rules governing discovery, nor does it supplement or displace them," and unless the public body proves "that it is a party to a civil action involving the requesting party," it "is afforded no exemption from disclosure based solely on the status of one of the parties as litigants." *Taylor v. Lansing Board of Water & Light*, 272 Mich. App. 200, 205 (2006) (per curiam) (describing *Central Michigan University Supervisory-Technical Ass'n v. Central Michigan University Board of Trustees*, 223 Mich. App. 727, 730 (1997)).

The exemption reaches "[r]ecords or information relating to" the action, which the University of Michigan read to include the engagement terms and invoices of its outside counsel. Printout at 5. Where the Act means to protect a litigant, it says so: it exempts information that would identify a party who proceeds anonymously as the victim of sexual misconduct. Mich. Comp. Laws § 15.243(1)(b)(vii), (cc). Subdivision (v) protects no litigant. It is written against one. And its application is not a duty but an option, "may exempt," *id.* § 15.243(1), so that "the decision to release the information becomes discretionary," *Taylor*, 272 Mich. App. at 205. A penalty whose imposition is committed to the discretion of the public body is not "closely fitted" to anything. *Catholic Charities*,

605 U.S. at 248 (internal quotation marks omitted). "There may be hard calls to make in policing that rule, but this is not one." *Id.* at 254. In *Trinity Lutheran* the consequence was "a few extra scraped knees," and the exclusion was "odious to our Constitution all the same." 582 U.S. at 467.

**4.3 No plainly legitimate sweep**

Count I challenges the exemption on its face. Compl. ¶ 36, at 20. In a First Amendment case the question is "whether 'a substantial number of [the law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep,'" and "[t]he first step in the proper facial analysis is to assess the state law['s] scope. What activities, by what actors, do the law[] prohibit or otherwise regulate?" *Moody v. NetChoice, LLC*, 603 U.S. 707, 723, 724 (2024) (quoting *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 615 (2021)). Section 15.243(1)(v) authorizes one act, withholding, by one class of actors, public bodies, against one class of persons, requesters in "a civil action in which the requesting party and the public body are parties." Every application of it is an application to a petitioner, because a request from anyone else is a request the subdivision does not reach. "The proper focus of the constitutional inquiry is the group for whom the law is a restriction, not the group for whom the law is irrelevant." *City of Los Angeles v. Patel*, 576 U.S. 409, 418 (2015) (quoting *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 894 (1992)). There is no legitimate sweep to weigh against the unconstitutional one, because the subdivision does no work on anyone it does not penalize. *See id.* at 419.

Count I arises under section 1 of the Act of April 20, 1871, ch. 22, 17 Stat. 13, Rev. Stat. § 1979, 42 U.S.C. § 1983.[2] The injunction sought is the one equity has always given:

[2] As enacted, section 1 made a person who, "under color of any law, statute, ordinance, regulation, custom, or usage of any State," subjects another to the deprivation of rights "secured by the Constitution of the United States" liable to the party injured "any such law, statute, ordinance, regulation, custom, or usage of the State to the contrary notwithstanding." 17 Stat. at 13. The Revised Statutes of 1874, prepared by commissioners appointed "to revise, simplify, arrange, and consolidate all statutes of the United States, general and permanent in their nature," Act of June 27, 1866, ch. 140, § 1, 14 Stat. 74, 74, restate the section as Rev. Stat. § 1979 without that clause, and with "the Constitution and laws" for "the Constitution of the United States." Rev. Stat. § 1979 (1874), 18 Stat. pt. 1, at 348. The Supreme Court has

an order that this defendant not apply this provision to this plaintiff. Part 7, *infra*. *United Reporting* barred a facial attack by a plaintiff that had "neither 'attempt[ed] to qualify' for access to the government's information nor presented an as-applied claim," and so "could prevail only by invoking the rights of others." *Sorrell*, 564 U.S. at 569 (quoting *United Reporting*, 528 U.S. at 40). Plaintiff asked and was refused on the ground the statute names. Printout at 5.

### 4.4 The state-law injunction

Count II asks for what Michigan's statute says a court "shall" give: "a court that determines a public record is not exempt from disclosure shall order the public body to cease withholding or to produce all or a portion of a public record wrongfully withheld, regardless of the location of the public record." Mich. Comp. Laws § 15.240(4). Plaintiff asks for the first of the two, an order to cease withholding, in the form the statute gives it, which is a prohibition. The only exemption invoked for the denial is one "[t]he Judges in every State" are bound to disregard, U.S. Const. art. VI, cl. 2; Compl. ¶ 40, at 22, and "the burden is on the public body to sustain its denial," Mich. Comp. Laws § 15.240(4). An injunction against applying § 15.243(1)(v) to Plaintiff's requests is prospective; the order to cease withholding reaches the denial of August 24, 2026.

## 5 Irreparable harm

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod*, 427 U.S. at 373 (plurality opinion). The Ninth Circuit applies the sentence as written. "[A] party seeking preliminary injunctive relief in a First Amendment context can establish irreparable injury sufficient to merit the grant of relief by demonstrating the existence of a colorable First Amendment claim." *Sammartano v. First Judicial District Court*, 303 F.3d 959, 973

---

quoted the section as enacted, *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 608 n.15 (1979), and has not construed the omitted clause. Alexander A. Reinert, *Qualified Immunity's Flawed Foundation*, 111 Calif. L. Rev. 201, 207, 235–38 (2023); *Rogers v. Jarrett*, No. 21-20200, slip op. at 12–16 (5th Cir. Mar. 30, 2023) (Willett, J., concurring) (published at 63 F.4th 971), https://www.ca5.uscourts.gov/opinions/pub/21/21-20200-CV0.pdf.

(9th Cir. 2002) (internal quotation marks omitted). A plaintiff who is likely to prevail on a constitutional claim "will almost always demonstrate he is suffering irreparable harm as well," and the harm is irreparable "no matter how brief the violation." *Baird v. Bonta*, No. 23-15016, slip op. at 7, 10 (9th Cir. Sept. 7, 2023) (published at 81 F.4th 1036), https://cdn.ca9.uscourts.gov/datastore/opinions/2023/09/07/23-15016.pdf. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012); *Klein v. City of San Clemente*, 584 F.3d 1196, 1207–08 (9th Cir. 2009).

"Although [the Supreme Court's] interim orders are not conclusive as to the merits, they inform how a court should exercise its equitable discretion in like cases." *Trump v. Boyle*, 606 U.S. 989, 989 (2025) (order granting stay). It has found irreparable harm to the Government in an injunction that "meddles in 'the workings of' the Executive Branch, preventing it from even trying to lawfully implement" an executive order, because "an applicant can show 'irreparable harm from a threshold error without also showing that, at the end of the day, it will prevail on the underlying merits,'" *Trump v. California*, 609 U.S. ___, ___ (2026) (per curiam) (slip op., at 9–10) (quoting *Trump v. CASA, Inc.*, 606 U.S. 831, 860 (2025)), https://www.supremecourt.gov/opinions/25pdf/26a124_hgci.pdf, and in the delay of a ballroom, "every day" of which "impairs the Secret Service's 'protective operations,'" a ballroom that "would enhance security for Presidents and their visitors who in the past have had to meet in soft tents or offsite when gathering in large numbers," where "the only harm the Trust claims is the offense one of its members will suffer from having to view a structure of the 'scale,' 'height,' and 'massing' the government intends," *National Park Service v. National Trust for Historic Preservation in the United States*, 609 U.S. ___, ___ (2026) (per curiam) (slip op., at 6–7), https://www.supremecourt.gov/opinions/25pdf/26a203_2b8e.pdf.

Absent an injunction, the University of Michigan may invoke § 15.243(1)(v) against Plaintiff. Mich. Comp. Laws § 15.243(1); Printout at 5. "[T]he value of a sword of Damocles is that it hangs—not that it drops." *First Choice Women's Resource Centers, Inc. v. Davenport*, 608 U.S. 174, 192 (2026) (quoting *Arnett v. Kennedy*, 416 U.S. 134, 231

(1974) (Marshall, J., dissenting)); Compl. ¶ 17, at 10.

"[I]t is a general and indisputable rule, that where there is a legal right, there is also a legal remedy by suit or action at law, whenever that right is invaded." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163 (1803) (quoting 3 W. Blackstone, Commentaries *23). Damages under Rev. Stat. § 1979, 42 U.S.C. § 1983, are governed by "the principle of compensation," and "substantial damages should be awarded only to compensate actual injury." *Carey v. Piphus*, 435 U.S. 247, 257, 266 (1978). "[T]he abstract value of a constitutional right may not form the basis for § 1983 damages," *Memphis Community School District v. Stachura*, 477 U.S. 299, 308 (1986), and damages "based on the abstract 'value' or 'importance' of constitutional rights are not a permissible element of compensatory damages," *id.* at 310. Where the violation is proved and a further loss is not, the award at law is "nominal damages not to exceed one dollar." *Carey*, 435 U.S. at 267. The violation is an injury all the same. "[E]very violation imports damage"; nominal damages are "the damages awarded by default until the plaintiff establishes entitlement to some other form of damages," and they "are redress, not a byproduct." *Uzuegbunam v. Preczewski*, 592 U.S. ___, ___ (2021) (slip op., at 6, 9, 11) (internal quotation marks omitted). "Article III is worth a dollar." *Id.* at ___ (slip op., at 11) (quoting *Sprint Communications Co. v. APCC Services, Inc.*, 554 U.S. 269, 305 (2008) (Roberts, C.J., dissenting)). Where "federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief," and "where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." *Bell v. Hood*, 327 U.S. 678, 684 (1946). An injury the law calls real and the law of damages calls a dollar is an injury for which there is no adequate remedy at law, and the remedy at law that counts is the one available here: "no adequate remedy at law exists, so as to deprive federal courts of equity jurisdiction, unless it is available in the federal courts." *First Choice*, 608 U.S. at 196 (quoting *Petroleum Exploration, Inc. v. Public Service Comm'n*, 304 U.S. 209,

217 (1938)). On Count I, the claim under Rev. Stat. § 1979, 42 U.S.C. § 1983, for the deprivation of rights secured by the First and Fourteenth Amendments, Plaintiff has prayed for "nominal damages of $0.67, a figure selected to be nominal," which "redress the completed violation." Compl. ¶¶ 3, 18, 37, at 2–3, 10–11, 21; *id.* at 24 (Prayer ¶ C).

**6 The equities and the public interest**

The last two factors merge where the government is the opposing party, *Nken*, 556 U.S. at 435, and here they merge into one question: what Michigan loses if the University of Michigan is told, for the duration of this action, that it may not withhold public records from Plaintiff on the ground that "the requesting party and the public body are parties" to "a civil action." Mich. Comp. Laws § 15.243(1)(v); Printout at 5.

A government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations," and it "cannot suffer harm from an injunction that merely ends an unlawful practice." *Baird*, slip op. at 11 (quoting *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983), and *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013)). The burden the order places on the University of Michigan is the one the Act places on it for every other requester: to search for, locate, and examine the records, to produce them, and to charge the requester for the labor. Mich. Comp. Laws § 15.234(1). The records concern the University's expenditures, a subject its own statute directs it to report every year and to make "available to the public in compliance with" the Act. *Id.* § 390.15; Compl. ¶ 29, at 17–18.

"'[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury,'" *CASA*, 606 U.S. at 860–61 (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)), and the order enjoins the Regents of the University of Michigan, which is not the State, Part 8, *infra*; the statute operates after the order as before on every requester in Michigan but one and in every public body in Michigan but one; and the State itself, served with the complaint and the notice of constitutional question on October 2, 2026, ECF No. 9; Fed. R. Civ. P. 5.1(a)(2), had not appeared when this motion was filed. *King*

speaks of statutes "enacted by representatives of its people." The representatives of the people of Michigan enacted the declaration that "all persons" are "entitled to full and complete information regarding the affairs of government," Mich. Comp. Laws § 15.231(2), and the order enforces it.

"Courts considering requests for preliminary injunctions have consistently recognized the significant public interest in upholding First Amendment principles," *Sammartano*, 303 F.3d at 974, and "'it is always in the public interest to prevent the violation of a party's constitutional rights,'" *Melendres*, 695 F.3d at 1002 (quoting *Sammartano*, 303 F.3d at 974). Michigan has declared its own public interest in the matter twice over: in the policy of the Act, and in its instruction that an action to compel disclosure "shall be assigned for hearing and trial or for argument at the earliest practicable date and expedited in every way." Mich. Comp. Laws § 15.240(5).[3]

## 7 The remedy

*Trump v. CASA, Inc.* settles the form of the relief. "The Judiciary Act of 1789 endowed federal courts with jurisdiction over 'all suits . . . in equity,'" and "still today, this statute 'is what authorizes the federal courts to issue equitable remedies.'" *CASA*, 606 U.S. at 841 (citations omitted); *see* Compl. ¶¶ 19–22, at 11–12. "Traditionally, courts issued injunctions prohibiting executive officials from enforcing a challenged law or

[3]The instruction is addressed to Michigan's courts. In a court of the United States, "[n]otwithstanding any other provision of law, each court of the United States shall determine the order in which civil actions are heard and determined, except that the court shall expedite the consideration of . . . any action for temporary or preliminary injunctive relief, or any other action if good cause therefor is shown," and good cause "is shown if a right under the Constitution of the United States or a Federal Statute (including rights under section 552 of title 5) would be maintained in a factual context that indicates that a request for expedited consideration has merit." 28 U.S.C. § 1657(a); *cf. Berk v. Choy*, 607 U.S. 187, 192 (2026) (a valid Federal Rule "displaces contrary state law even if the state law would qualify as substantive under *Erie*'s test"). The complaint also prays for a declaration, 28 U.S.C. § 2201(a); Compl. ¶ 9, at 5; *id.* at 24 (Prayer ¶ A), and "[t]he court may order a speedy hearing of a declaratory-judgment action." Fed. R. Civ. P. 57; *see* Fed. R. Civ. P. 57 advisory committee's note to 1937 adoption (citing the practice of Michigan and California of "docketing the case for early hearing as on a motion"). The subsection is cited for the public interest the act itself declares. "The law as it passed is the will of the majority of both houses, and the only mode in which that will is spoken is in the act itself." *Aldridge v. Williams*, 44 U.S. (3 How.) 9, 24 (1845), *quoted in Conroy v. Aniskoff*, 507 U.S. 511, 519 (1993) (Scalia, J., concurring in judgment); *see West Virginia University Hospitals, Inc. v. Casey*, 499 U.S. 83, 98 (1991) ("The best evidence of that purpose is the statutory text adopted by both Houses of Congress and submitted to the President.").

policy only against the plaintiffs in the lawsuit." *CASA*, 606 U.S. at 837.

The first paragraph of the proposed order enjoins the Regents of the University of Michigan from invoking § 15.243(1)(v) against any request Plaintiff makes under the Act while this action is pending. The University of Michigan may apply the subdivision to every request she makes while this action is pending, Part 5, *supra*, and the order reaches each of them. It states its terms and describes the act restrained without reference to any other document, Fed. R. Civ. P. 65(d)(1)(B), (C), and it binds the persons Rule 65(d)(2) names. The second paragraph is the order Count II asks for, in the words of the Michigan statute: that the Regents "cease withholding," in reliance on § 15.243(1)(v), the records responsive to Request 270260. Mich. Comp. Laws § 15.240(4). It is a prohibition, addressed to a corporation that may be sued, *id.* § 390.4, in the form Michigan's own Legislature prescribed, Part 4.4, *supra*, and it determines nothing about any ground of exemption the University of Michigan has not asserted. That the Act contemplates the order upon a determination "de novo," *id.* § 15.240(4), says when Michigan's courts enter it. When this Court may enter it before judgment is a question Rule 65(a) answers, and "a valid Rule of Civil Procedure displaces contrary state law even if the state law would qualify as substantive under *Erie*'s test." *Berk*, 607 U.S. at 192.

Rule 5.1 permits the order. Before the Attorney General's time to intervene expires the court "may not enter a final judgment holding the statute unconstitutional," Fed. R. Civ. P. 5.1(c), and "the court retains authority to grant interlocutory relief," Fed. R. Civ. P. 5.1 advisory committee's note to 2006 adoption. The sixty days from the notice filed September 30, 2026, ECF No. 4, run out before the hearing in any event. "When a party comes to us for interim relief, . . . we 'cannot hide in the tall grass.' . . . Ultimately, 'we must grant or deny.' . . . That means resolving (at least tentatively) the legal issues properly before us—and not just the easy ones." *Trump v. Cook*, 609 U.S. 528, 550 n.3 (2026) (quoting *CASA*, 606 U.S. at 874 (Kavanaugh, J., concurring)).

Security may be dispensed with. Rule 65(c) conditions an injunction on security "in

an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The rule "invests the district court 'with discretion as to the amount of security required, if any,'" and "[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (citation omitted). The conduct enjoined is the refusal of a public records request on one ground. The cost of not refusing it is the cost of processing it, which the Act permits the University of Michigan to charge to the requester. Mich. Comp. Laws § 15.234(1). There is no realistic likelihood of harm. No security should be required.

## 8 The Eleventh Amendment

To be sure, the United States Court of Appeals for the Sixth Circuit holds that the Regents of the University of Michigan is an agency of the State of Michigan entitled to the State's immunity under the Eleventh Amendment. *Estate of Ritter v. University of Michigan*, 851 F.2d 846, 848, 851 (6th Cir. 1988) ("the Board of Regents unquestionably is a state agency to which the amendment applies"); *Ashford v. University of Michigan*, No. 22-2057, slip op. at 9 (6th Cir. Jan. 9, 2024) (citing *Ritter*) (published at 89 F.4th 960, 969), https://www.opn.ca6.uscourts.gov/opinions.pdf/24a0007p-06.pdf; *Kerchen v. University of Michigan*, No. 23-1718, slip op. at 11 (6th Cir. May 6, 2024) (citing *Ashford*), https://www.opn.ca6.uscourts.gov/opinions.pdf/24a0103p-06.pdf. And although the Regents of the University of Michigan has not asserted the defense in this action, its one filing being a stipulation that it "requires more time to evaluate its response to Plaintiff's Complaint," ECF No. 10 ¶ 4, the defense, as the Supreme Court treats it, "partakes of the nature of a jurisdictional bar so that it need not be raised in the trial court," *Edelman v. Jordan*, 415 U.S. 651, 678 (1974), as quoted in *Ritter*, 851 F.2d at 851, and "deprives federal courts of any jurisdiction to entertain such claims, and thus may be raised at any point in a proceeding," *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99 n.8 (1984), by the court of appeals "sua sponte" or by the defendant "for

the first time on appeal," *Ritter*, 851 F.2d at 851. In *Ritter* the Board had not claimed the immunity; the court raised the question at argument, requested supplemental briefs, and the Board "responded by asserting the eleventh amendment defense." *Id.* at 848; *see id.* at 851–52 (no waiver by removal or by the Board's initial failure to assert the defense). The court then treated *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464 (1945), and *Edelman*, 415 U.S. at 663, as making "the most important factor if not the absolutely determinative factor" whether a judgment "would be paid out of the state treasury," 851 F.2d at 850, and found the treasury pledged by two statutes, Mich. Comp. Laws §§ 600.6458 and 600.6095, *id.* at 849 & n.7. *Ashford* and *Kerchen* repeat the conclusion without reexamining it, and *Kerchen* applies it to claims under state law. Slip op. at 18 (citing *Pennhurst*, 465 U.S. at 120–21).

*Ritter* was egregiously wrong from the start. Its reasoning was exceptionally weak. *Cf. Dobbs v. Jackson Women's Health Organization*, 597 U.S. ___, ___ (2022) (slip op., at 6) (describing *Roe v. Wade*, 410 U.S. 113 (1973)). By 1988 the Supreme Court had been saying for a hundred and sixty-four years that a corporation the State creates with the capacity to sue and be sued is not the State. "The suit is against a corporation, and the judgment is to be satisfied by the property of the corporation, not by that of the individual corporators. The State does not, by becoming a corporator, identify itself with the corporation." *Bank of the United States v. Planters' Bank of Georgia*, 22 U.S. (9 Wheat.) 904, 907 (1824). The rule held where the State was the only stockholder, because the directors "alone constitute the body corporate, the metaphysical person liable to suit." *Bank of Kentucky v. Wister*, 27 U.S. (2 Pet.) 318, 323 (1829). "The Eleventh Amendment limits the jurisdiction only as to suits against a State," and a county, "politically . . . a corporation created by and with such powers as are given to it by the State," is "a part of the State only in that remote sense in which any city, town or other municipal corporation may be said to be a part of the State." *Lincoln County v. Luning*, 133 U.S. 529, 530 (1890). The Supreme Court had said it of a state college. *Hopkins v. Clemson Agricultural College*, 221 U.S. 636 (1911), concerned a college the State had accepted

and chartered by statute, six of whose thirteen trustees the legislature elected, *id.* at 638, which the State funded with "more than $100,000 per annum," and which the trial court had found to have "no property which could be sold under execution," *id.* at 640. "[N]either public corporations nor political subdivisions are clothed with that immunity from suit which belongs to the State alone by virtue of its sovereignty," it held, *id.* at 645, because "the statute created an entity, a corporation, a juristic person, whose right to hold and use property was coupled with the provision that it might sue and be sued, plead and be impleaded, in its corporate name," *id.* at 646; and as for the treasury, "we have no right to proceed on the theory that if, at the end of the litigation, plaintiff establishes his right to damages, the judgment would not be paid," *id.* at 648. In the decade before *Ritter* the Supreme Court had framed the question as whether an entity "is to be treated as an arm of the State partaking of the State's Eleventh Amendment immunity, or is instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend," and had answered it, for a school board that "receives a significant amount of money from the State," by finding the board "more like a county or city than it is like an arm of the State." *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 280 (1977). It had held that the Amendment's protection "is only available to 'one of the United States,'" and is not read to reach a state-created agency "[u]nless there is good reason to believe that the States structured the new agency to enable it to enjoy the special constitutional protection of the States themselves." *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 400, 401 (1979). And it had held that a county "designated a 'body corporate and politic,'" which "may sue and be sued" and which, "for all that appears the county alone, is liable for all judgments against it," is not the State. *Moor v. County of Alameda*, 411 U.S. 693, 719 (1973). *Ritter* cites none of these decisions. *Galette v. New Jersey Transit Corp.*, 607 U.S. 509 (2026), applies each of them, *id.* at 524–26, 528, 533–34, and files *Ford Motor* and *Edelman* where they belong, under the real party in interest, which is "a separate question from whether an entity is the arm of the State,"

*id.* at 533. *See also* Brief of Professors William Baude and Stephen E. Sachs as Amici Curiae in Support of Cedric Galette and Jeffrey Colt et al. at 2–9, *Galette v. New Jersey Transit Corp.*, Nos. 24-1021, 24-1113 (U.S. Nov. 19, 2025), https://www.supremecourt.gov/DocketPDF/24/24-1021/385149/20251119135338068_24-1021_24-1113_Amicus%20Brief.pdf (collecting the cases: "At the Founding, this would have been an easy case.").

The two statutes *Ritter* relied on illustrate the distinction rather than escape it. Section 600.6458 pays a judgment of the so-called "court" of claims, *Taylor v. Auditor General*, 360 Mich. 146, 150 (1960); Compl. ¶ 7, at 5, from the appropriation of the institution that lost it, which is to say that the institution pays, and what the State appropriates to the University of Michigan "becomes the property of the University, to be expended under the exclusive direction of the Regents, and passes beyond the control of the State through its legislative department." *Weinberg v. Regents of the University of Michigan*, 97 Mich. 246, 254 (1893) (opinion of Grant, J., joined by Hooker, C.J., and Long, J.), quoted in *Board of Regents of the University of Michigan v. Auditor General*, 167 Mich. 444, 451 (1911) (citing it as "*Weinberg v. Regents*, 97 Mich. 254"); *see Sterling v. Regents of the University of Michigan*, 110 Mich. 369, 380, 382 (1896) (citing it as "97 Mich. 246," and reading it to hold the University "not to be a State institution under the control and management of the legislature, as were the other corporations enumerated in the statute then under discussion").[4] Section 600.6095 applies to a judgment "obtained

[4]One might ask whether a judgment against the Regents is, in the end, paid by the treasury, and what would follow if it were. Section 600.6458 is a payment waterfall. The court must "determine and specify in that judgment the department, commission, board, institution, arm, or agency from whose appropriation that judgment shall be paid," Mich. Comp. Laws § 600.6458(1); payment is "from the unencumbered appropriation of the department, commission, board, institution, arm, or agency if the state treasurer determines the unencumbered appropriation is sufficient for the payment"; failing that, the treasurer "shall instruct the clerk of the court of claims to issue a voucher against an appropriation made by the legislature for the payment of judgment claims and allowed claims"; and failing that, the judgment "shall be paid as soon as money is available for that purpose." *Id.* § 600.6458(2). The judgment debtor named in the judgment is the same at every tier; the tiers order the sources of funds. The "effectively treasury" view has a certain force. Money is fungible, and a dollar the University pays is a dollar the State need not appropriate; on that view the obligation is wherever the money is. The inference is the familiar one from the Commerce Clause: a contribution "trivial by itself" counts once "taken together with that of many others similarly situated," *Wickard v. Filburn*, 317 U.S. 111, 127–28 (1942), "[m]otion at the outer rim is communicated perceptibly, though minutely, to recording instruments at the center," *United States v. Lopez*, 514 U.S. 549, 567 (1995) (quoting *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495,

against any corporate body . . . having charge or control of any state institution" and directs that "the amount thereof shall be included and collected in the state tax and paid to the person entitled thereto," which is to say that the State undertakes to pick up the tab: an indemnity.[5] "The critical inquiry is who may be legally bound by the court's adverse judgment, not who will ultimately pick up the tab," *Lewis v. Clarke*, 581 U.S.

---

554 (1935) (Cardozo, J., concurring)), and before long "it is difficult to perceive any limitation," *id.* at 564. Whatever one makes of that as a limit on Congress, it may be why the Supreme Court declined the same inference here: "a State's history of subsidizing an entity carries little weight," and hinging immunity on "the practical realities of state funding also risks arbitrary distinctions and inconsistent treatment of the same entity." *Galette*, 607 U.S. at 526, 534. The organizational-law literature would put the point as one about the partition of assets: "the essential role of all forms of organizational law is to provide for the creation of a pattern of creditors' rights—a form of 'asset partitioning'—that could not practicably be established otherwise," and "the separation between the firm's bonding assets and the personal assets of the firm's owners and managers" is "the core defining characteristic of a legal entity." Henry Hansmann & Reinier Kraakman, *The Essential Role of Organizational Law*, 110 Yale L.J. 387, 390, 393 (2000); *see id.* at 440 ("At its essential core, organizational law is property law, not contract law."). Professors Baude and Sachs put it in the vocabulary of persons: "the formal distinction among separate legal persons makes a real legal difference," for preclusion, "for matching debts and liabilities, and for exercising subject-matter jurisdiction, among other purposes." Brief of Professors Baude and Sachs, *supra*, at 12. On either account Michigan partitioned long ago: what it appropriates "becomes the property of the University." *Weinberg*, 97 Mich. at 254. In any event, Justice Sotomayor's opinion for a unanimous Court asks "whether the State would be formally obligated to pay the entity's judgments," *Galette*, 607 U.S. at 534, "not who will ultimately pick up the tab," *Lewis*, 581 U.S. at 165.

[5]Whether § 600.6095 has ever operated, and the amount of any judgment against the Regents of the University of Michigan ever "included and collected in the state tax," are questions the Regents is better equipped to answer. *Cf.* F. Couperin, *L'Art de toucher le clavecin* 39 (Paris 1717), https://www.loc.gov/item/20010859/ ("C'est que nous écrivons différemment de ce que nous èxécutons": we write differently from what we execute). In January 2022 the University of Michigan announced that it "and attorneys for approximately 1,050 claimants who have alleged abuse by the late U-M physician Robert E. Anderson have reached a settlement agreement that would resolve all of those survivors' claims against the university," that "[t]he cases would be resolved for $490 million," and that "[t]he settlement will be paid from university reserves and insurance proceeds. Over the years the university has built up reserves from a variety of funding sources. It will use these funds—excluding tuition and student fee receipt, gift receipts and state appropriation receipts—to supplement insurance proceeds to cover the costs of this settlement." Rick Fitzgerald, *U-M Reaches $490 Million Settlement with Anderson Plaintiffs*, The University Record (Jan. 19, 2022), https://web.archive.org/web/20260706183308/https://record.umich.edu/articles/u-m-reaches-490m-settlement-with-anderson-plaintiffs/. The announcement reported that the WilmerHale law firm "found Anderson engaged in a 'pervasive, decades-long, destructive pattern of sexual misconduct' involving hundreds of U-M students," and that "university officials knew about the misconduct as early as 1978, yet it continued for decades." Fitzgerald, *U-M Reaches $490 Million Settlement*, *supra*; *see* Rick Fitzgerald, *University Finalizes Settlement in Anderson Cases*, The University Record (Sept. 16, 2022), https://web.archive.org/web/20261026215859/https://record.umich.edu/articles/university-finalizes-settlement-in-anderson-cases/ ("The University of Michigan offers its heartfelt apology for the abuse perpetrated by the late Robert Anderson."). One may wonder whether the University of Michigan, asked by Plaintiff for the records of that payment, Mich. Comp. Laws §§ 15.232(i), 15.233(1), would "exempt from disclosure as a public record under this act" "[r]ecords or information relating to a civil action in which the requesting party and the public body are parties." *Id.* § 15.243(1), (1)(v). *Cf.* Printout at 5.

155, 165 (2017), a sentence the Sixth Circuit has itself quoted, *Kerchen*, slip op. at 12, and a State "cannot imbue an entity with its immunity simply by agreeing to 'pick up the tab' (such as by choosing to indemnify the entity)," *Galette*, 607 U.S. at 525. "States institute indemnification policies voluntarily. And so, indemnification provisions do not implicate one of the underlying rationales for state sovereign immunity—a government's ability to make its own decisions about 'the allocation of scarce resources.'" *Lewis*, 581 U.S. at 167 (quoting *Alden v. Maine*, 527 U.S. 706, 751 (1999)).

The Regents of the University of Michigan is "a body corporate," Mich. Const. art. VIII, § 5,[6] "with the right, as such, of suing and being sued," Mich. Comp. Laws § 390.4; Compl. ¶¶ 5, 12, at 3, 6. "The clearest evidence that a State has created a legally separate entity is that it created a corporation with the traditional corporate powers to sue and be sued, hold property, make contracts, and incur debt." *Galette*, 607 U.S. at 524. The Attorney General of Michigan joined twenty-two States in asking the Supreme Court to make a State's own label for its creature dispositive, *id.* at 514–15, 535, and the Supreme Court declined, *id.* at 535–36.

---

[6] The body corporate is older than the State. On August 26, 1817, the Governor and Judges of the Territory of Michigan established "a catholepistemiad, or university, denominated the catholepistemiad, or university, of Michigania," composed of "thirteen didaxiim, or professorships," with power "to sue, to be sued, to acquire, hold, and aliene, property," and with a "name and stile as a corporation" of "The Catholepistemiad, or University, of Michigania." An Act to establish the Catholepistemiad, or University, of Michigania (Mich. Terr. Aug. 26, 1817), *reprinted in* University of Michigan, *1837–1887: The Semi-Centennial Celebration of the Organization of the University of Michigan* 185–86 (Ann Arbor 1888). An act of April 30, 1821 made "the Trustees of the University of Michigan" a "body politic and corporate" and vested in it the property of the corporation of 1817, *Regents of the University v. Board of Education*, 4 Mich. 213, 222–24 (1856); the State's legislature then made the regents "a body corporate, with the name and title of the 'Regents of the University of Michigan;' with the right as such of suing and being sued," Act No. 55, § 6, 1837 Mich. Laws 102, 103 (approved Mar. 18, 1837); and the Supreme Court of Michigan held the Regents "as truly the lawful successors of the original Corporation as if they had been appointed by the Legislature under the Act of 1821," 4 Mich. at 227, *see id.* at 222 (the Act of 1817 confided the institution "to the management of this magnificent legal entity"), and later described the holding as one that the Regents are "a continuation of the same corporation," *Regents of the University of Michigan v. Detroit Young Men's Society*, 12 Mich. 138, 162–63 (1863). The Constitution of 1850 provided that the Regents "shall continue to constitute the body corporate," Mich. Const. of 1850, art. XIII, § 7, *quoted in Sterling*, 110 Mich. at 378; the governing act provides that the institution "is continued under the name and style heretofore used," Mich. Comp. Laws § 390.1, and that "[t]he board of regents shall constitute the body corporate," *id.* § 390.4; and the Constitution of 1963 provides that the regents "shall constitute a body corporate," art. VIII, § 5. "The People, in their political capacity, are the corporators." 12 Mich. at 163 (Manning, J., dissenting). *Cf. Planters' Bank*, 22 U.S. (9 Wheat.) at 907 ("The State does not, by becoming a corporator, identify itself with the corporation.").

## 9 Conclusion

The motion should be granted and the proposed order entered.

Dated: October 26, 2026

Respectfully submitted,

/s/ kai

KAI, also known as Chi, Plaintiff *pro se*

`Assisted-by: Claude Fable 5.1 via Claude Code`

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

San Francisco Division

CHI,

*Plaintiff,*

v.

REGENTS OF THE UNIVERSITY OF MICHIGAN,

*Defendant.*

Case No. 3:26-cv-11021-EMC

The Honorable Edward M. Chen

**[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

Fed. R. Civ. P. 65(a), (d)

Plaintiff Chi, also known as kai and as Nadja Yang, *see* kai, *Resolvable 4-GDDs of type $2^u$ exist for all $u \equiv 4 \pmod 6$ except 4 and 10*, Zenodo (Oct. 25, 2026) (first amended version), https://doi.org/10.5281/zenodo.23578875, has moved under Rule 65(a) of the Federal Rules of Civil Procedure for a preliminary injunction. The motion came on for hearing on December 3, 2026. Having considered the motion, the memorandum of points and authorities, the printout filed with the motion, the verified complaint, the papers filed in opposition and in reply, and the arguments of the parties, the Court finds and concludes as follows. Fed. R. Civ. P. 65(d)(1)(A).

Plaintiff is likely to succeed on the merits of Count I. Michigan has made its public records available to "all persons," Mich. Comp. Laws § 15.231(2), and Mich. Comp. Laws § 15.243(1)(v) permits a public body to withhold them from a requester on the sole ground that "the requesting party and the public body are parties" to "a civil action." That ground is ongoing participation in a civil proceeding, an exercise of the right of access to the courts that the Petition Clause of the First Amendment secures, *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387 (2011); *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972), and the government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests," *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). The classification is subject to strict scrutiny, *Catholic Charities Bureau, Inc. v. Wisconsin Labor & Industry Review Commission*, 605 U.S. 238, 250–52 (2025), and Defendant has not shown a compelling interest that it serves. Plaintiff is also likely to succeed on Count II. The only exemption invoked for the denial of her request was § 15.243(1)(v); "the burden is on the public body to sustain its denial," Mich. Comp. Laws § 15.240(4); and a denial resting on a provision that cannot constitutionally be applied to the requester is not sustained.

Plaintiff is likely to suffer irreparable harm in the absence of preliminary relief. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion). Moreover, absent an injunction, Defendant may invoke § 15.243(1)

(v) against Plaintiff. "[T]he value of a sword of Damocles is that it hangs—not that it drops." *First Choice Women's Resource Centers, Inc. v. Davenport*, 608 U.S. 174, 192 (2026) (quoting *Arnett v. Kennedy*, 416 U.S. 134, 231 (1974) (Marshall, J., dissenting)).

The balance of equities and the public interest, which merge where the government is the opposing party, *Nken v. Holder*, 556 U.S. 418, 435 (2009), favor an injunction. Defendant suffers no cognizable harm from an order that it not apply an unconstitutional provision, and "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (internal quotation marks omitted). Rule 5.1(c) does not restrict interlocutory relief. There is no realistic likelihood of harm to Defendant from the injunction, and no security is required under Rule 65(c).

Accordingly, IT IS ORDERED that:

1. Defendant Regents of the University of Michigan, its officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with any of them, who receive actual notice of this order by personal service or otherwise, are enjoined from invoking, applying, or relying upon Mich. Comp. Laws § 15.243(1)(v) to deny, in whole or in part, any request made by or on behalf of Plaintiff Chi, also known as kai and as Nadja Yang, under the Michigan Freedom of Information Act, 1976 Mich. Pub. Acts No. 442, Mich. Comp. Laws §§ 15.231–15.246.

2. Defendant shall cease withholding, in reliance on Mich. Comp. Laws § 15.243(1)(v), the public records responsive to Plaintiff's request of July 31, 2026, designated by the University of Michigan as Request 270260. Mich. Comp. Laws § 15.240(4). This order does not determine whether any such record is exempt from disclosure on a ground other than § 15.243(1)(v).

3. No security is required under Rule 65(c).

4. This order takes effect immediately and remains in effect until final judgment in this action or further order of the Court.

IT IS SO ORDERED.

Dated: ______________________

______________________________
Edward M. Chen
United States District Judge